**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALEXANDER MANUFACTURING, INC.
EMPLOYEE STOCK OWNERSHIP
PLAN AND TRUST,
          *Plaintiff-Appellant,*

    v.

ILLINOIS UNION INSURANCE CO.,
          *Defendant-Appellee.*

No. 07-35812

D.C. No.
CV-06-00735-PK

OPINION

Appeal from the United States District Court
for the District of Oregon
Paul J. Papak, Magistrate Judge, Presiding

Argued and Submitted
March 4, 2009—Portland, Oregon

Filed March 25, 2009

Before: Susan P. Graber, Raymond C. Fisher, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Graber

## COUNSEL

Michael A. Maurer, Lukins & Annis, P.S., Spokane, Washington, for the plaintiff-appellant.

Donald J. Verfurth, Carney Badley Spellman, P.S., Seattle, Washington, for the defendant-appellee.

## OPINION

GRABER, Circuit Judge:

Plaintiff Alexander Manufacturing, Inc. Employee Stock Ownership Plan and Trust, the sole shareholder of Alexander Manufacturing, Inc. ("AMI"), sued Defendant Illinois Union Insurance Company, seeking to recover under an insurance policy that Defendant had issued to AMI. Plaintiff was the assignee of post-loss claims under the policy. The district court held that, under Oregon law, the insurance policy's anti-assignment clause prevented post-loss assignment of the claims to Plaintiff. We read the policy and Oregon law differently and, accordingly, reverse.

### FACTUAL AND PROCEDURAL HISTORY

Plaintiff is an employee stock ownership plan, a pension plan defined by 29 U.S.C. § 1002(2)(A) of the Employee Retirement Income Security Act of 1974 ("ERISA"), which was organized in Oregon effective in 1998. Plaintiff was the sole shareholder of AMI.

Plaintiff filed an action against three of its former fiduciaries, William Klutho, Daniel Spofford, and Donald Thoreson, alleging breach of fiduciary duty under ERISA. These same individuals were also former directors and officers of AMI. Plaintiff also brought a derivative action against them, alleging that they had breached certain duties owed as directors and officers of AMI.

AMI had previously purchased an insurance policy from Defendant, covering the period from January 1, 2003, to January 1, 2004. Under the insurance policy, AMI had "Directors & Officers and Company" coverage with a limit of $1 million. AMI also had fiduciary liability coverage with an additional limit of $1 million. The policy contained an anti-assignment clause, which stated that "[a]ssignment of interest under this Policy shall not bind Insurer unless their consent is endorsed hereon."

Plaintiff resolved the claims against Klutho, Spofford, and Thoreson through a settlement agreement for $1.3 million. The settlement agreement contained the following clause:

> Klutho, Spofford and Thoreson hereby each assign to [Plaintiff] any and all claims and/or causes of action each may possess against [Defendant] relating to, but not by means of limitation any and all rights or obligations relating to policy number BMI20004728. It is not the intent of the parties through this assignment to extinguish any claims which Klutho, Spofford and Thoreson may have against the insurance company, and this assignment therefore, does not release Klutho, Spofford and Thoreson from the liability, nor should it be construed in any way [to] affect any obligation of indemnity on the part of the insurance company.

The individuals paid $10,000 each and then assigned their rights under Defendant's insurance policy to Plaintiff. Plain-

tiff agreed not to execute the remainder of the judgment against the individuals and to bring the claim against Defendant instead. Defendant consented neither to the settlement agreement nor to the assignment of the policy to Plaintiff.

Plaintiff filed the present action against Defendant for breach of the duty to indemnify and breach of the duty of good faith and fair dealing. The parties filed cross-motions for summary judgment on the issue of assignability of claims. After briefing and oral argument, the district court granted Defendant's motion for summary judgment, denied Plaintiff's cross-motion for summary judgment, and dismissed the case. Plaintiff timely appeals.

## STANDARDS OF REVIEW

We review de novo the district court's grant of summary judgment and may affirm on any ground supported by the record. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 896 (9th Cir. 2008). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

## DISCUSSION

A.   *Applicable Law*

We have diversity jurisdiction, so we must follow Oregon law with respect to the interpretation of the insurance policy. *Kabatoff v. Safeco Ins. Co. of Am.*, 627 F.2d 207, 209 (9th Cir. 1980). Three decisions by the Oregon Supreme Court are relevant to our analysis: *Groce v. Fid. Gen. Ins. Co.*, 448 P.2d 554 (Or. 1968); *Hoffman Constr. Co. of Alaska v. Fred S. James & Co.*, 836 P.2d 703 (Or. 1992); and *Holloway v. Republic Indem. Co. of Am.*, 147 P.3d 329 (Or. 2006).

**[1]** *Groce* addressed an anti-assignment provision that is almost identical to the provision in this case. The provision in *Groce* read: "Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon." 448 P.2d at 559 (alterations omitted). The insurer in *Groce* had argued that the text of the provision prohibited the assignment of post-loss causes of action against the insurer without the insurer's endorsement. *Id.* The Oregon Supreme Court rejected that argument summarily, stating:

> But the contention that such a clause prohibits the insured from assigning his cause of action need not detain us. It is well settled that such a provision does not preclude the assignment of a cause of action for damages for breach of a contract.

*Id.* The court supported its statement by citing only California state law cases.

In *Hoffman*, the Oregon Supreme Court set forth an analytical approach to the construction of insurance contracts. 836 P.2d at 706-07. Noting that interpretation of insurance contracts is a question of law, the court stated that the " 'primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties.' " *Id.* at 706 (quoting *Totten v. N.Y. Life Ins. Co.*, 696 P.2d 1082, 1086 (Or. 1985)). The court held that "[w]e determine the intention of the parties based on the terms and conditions of the insurance policy." *Id.*

At issue in *Hoffman* was how to interpret the phrase "amount recoverable." *Id.* at 705. The plaintiff and the defendant offered competing, "plain meaning" interpretations. *Id.* The plaintiff argued that, because the term reasonably could be interpreted in two ways, it was ambiguous and should be construed against the insurer, who drafted the policy. *Id.* The Oregon Supreme Court disagreed, holding that, before resort-

ing to the rule of construction against the insurer, a court must engage in a series of analytical steps:

> In other words, a term is ambiguous in a sense that justifies application of the rule of construction against the insurer *only* if two or more plausible interpretations of that term withstand scrutiny, *i.e.*, continues to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole.

*Id.* Thus, if one possible meaning of a term is not reasonable in light of the other provisions of the policy, leaving only the other reasonable interpretation of the term, there is no remaining ambiguity. In such a case, "resort to the rule that ambiguities are construed against the insurer is inappropriate." *Id.* at 709.

In 2006, the Oregon Supreme Court reaffirmed the analytical approach in *Hoffman* when it construed an anti-assignment clause in an insurance policy. *Holloway*, 147 P.3d at 333-35. In *Holloway*, the plaintiff sued the insured, claiming that she had been sexually harassed while employed by the insured. *Id.* at 331-32. The insurer refused to defend and indemnify the insured. *Id.* at 332. The plaintiff and the insured settled the case and, under the settlement, the insured assigned to the plaintiff the insured's right to defense and indemnity under the insurance policy. *Id.* Once she received the assignment, the plaintiff filed an action for breach of contract against the insurer. *Id.* The insurance policy contained an anti-assignment clause that provided: "Your rights or duties under this policy may not be transferred without our written consent." *Id.* at 331.

The Oregon Court of Appeals held that the provision was ambiguous because it did not define which particular rights or

duties could not be assigned and, therefore, construed the clause in favor of the insured. *Id.* at 332-33. The Oregon Supreme Court reversed after reaffirming and elaborating on the analytical approach introduced in *Hoffman*. *Id.* The court held that, if the insurance policy explicitly defines the phrase in question, the court applies that definition. *Id.* If the policy does not define the phrase in question, the court must consider whether the phrase has a plain meaning. *Id.* If the phrase in question has a plain meaning, the court must apply that meaning and no further analysis is needed. *Id.* If the phrase in question has more than one plausible interpretation, the court must then examine the context in which the phrase is used and the broader context of the policy as a whole. *Id.* at 333-34. It is only after this full contextual examination that any remaining ambiguity should be construed against the drafter. *Id.* at 334.

Following this framework, the Oregon Supreme Court held that the anti-assignment clause in *Holloway* was not ambiguous and that the provision was broadly worded to include both pre-loss and post-loss rights. *Id.* at 335. Specifically, the court held that "the clause applies to whatever rights or duties the insured may have under the policy" and that "[n]othing in the clause suggests a limitation to pre-loss rights or duties or provides an exception for post-loss rights or duties." *Id.* at 334. The court further held that "[r]eading such an exception into the policy would not be reasonable." *Id.* In holding the assignment invalid, the court distinguished contrary authority from other jurisdictions on the ground that those courts did not follow Oregon's analytical approach to the construction of insurance contracts. *Id.* at 335.

B.   *Interpretation of the Anti-Assignment Clause*

The parties dispute what Oregon law requires us to do as we interpret the anti-assignment clause before us. Plaintiff argues that *Groce* remains good law and stands for the proposition that an anti-assignment clause worded like this one applies only to pre-loss assignments. Defendant argues that

*Holloway* holds that any anti-assignment clause that fails to limit its scope expressly must be interpreted to apply to pre-loss *and* post-loss rights, thus implicitly overruling *Groce* and controlling our decision.

**[2]** We agree with Plaintiff. *Groce* declared a substantive rule of law concerning the interpretation of a specific clause in insurance contracts. The clause at issue in that case— "Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon," *Groce*, 252 Or. at 306 (alterations omitted), was materially identical to the clause here—"Assignment of interest under this Policy shall not bind Insurer unless their consent is endorsed hereon." *Hoffman* provided a method for analyzing insurance contracts in the future but did not overrule any previous substantive case, including *Groce*. In fact, the Oregon Supreme Court did not even mention *Groce* in either *Hoffman* or *Holloway*. The court did not suggest that every pre-*Hoffman* case, which, by definition, had not applied *Hoffman*'s analytical steps, was overruled.

**[3]** Furthermore, the rule set forth in *Groce*, that this anti-assignment clause applies only to pre-loss assignments, is not undercut by the *Hoffman* methodology. Even if *Groce* were not binding, this anti-assignment clause is ambiguous.[1] There are two plausible interpretations of the term "interest": one in which "interest" does not encompass post-loss assignments, and one in which "interest" does apply to post-loss as well as pre-loss assignments. *See Hoffman*, 836 P.2d at 706.

Regarding the first interpretation, "interest" plausibly could refer to a financial stake in the policy, as distinct from a financial stake in a post-loss cause of action. In that sense, no "interest" in the policy may be assigned, for the sensible reason that the insurer accepts only the known risk of a particular

---

[1]*Holloway* is not instructive in applying *Hoffman* here, because the anti-assignment clauses are worded very differently.

insured. *See* 16 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 49.51, at 420 (4th ed. 2000). That purpose is irrelevant after a known loss already has occurred. A definition of the term "interest" in *Black's Law Dictionary* supports this reading: "A legal share in something; all or part of a legal or equitable claim to or right in property." *Black's Law Dictionary* 828 (8th ed. 2004). The words that follow "interest" in the anti-assignment clause also support this reading: The clause precludes assignment of an "interest *under this policy*" (emphasis added), not an interest in later causes of action.

On the other hand, "interest" could be understood to include both pre- and post-loss assignments. An alternate definition of "interest" contained in *Black's Law Dictionary* is the following: "Collectively, the word includes any aggregation of rights, privileges, powers, and immunities; distributively, it refers to any one right, privilege, power, or immunity." *Id.* Under that definition, one plausibly could interpret "interest" in the anti assignment clause to encompass *all* rights, including post-loss assignments.

**[4]** Reviewing the greater context of "interest" and other provisions of the policy, we find no clues to determine which of the two plausible interpretations was intended by the parties. When both interpretations are reasonable in light of the other provisions of the policy, the court must resort to the rule of construction against the insurer. *Hoffman*, 836 P.2d at 706. Defendant drafted the anti-assignment clause, so we construe the term against it. The usual presumption against the drafter applies with particular force here in view of the clear rule of *Groce*; Defendant chose a nearly identical anti-assignment clause with constructive knowledge of its meaning. Because Plaintiff's interpretation of the anti-assignment clause is reasonable in context, because Defendant drafted it, and because Defendant chose a clause with a known meaning under Oregon law, we hold that the anti-assignment clause at issue in this case excludes post-loss assignments.

REVERSED.