**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TIMOTHY MORT, | No. 10-35762 |
| Plaintiff - Appellant, | D.C. No. 1:09-cv-03052-PA |
| v. | |
| UNITED OF OMAHA LIFE INSURANCE COMPANY and RE/MAX EQUITY GROUP, INC., Group Long Term Disability Insurance Plan, | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the District of Oregon
Owen M. Panner, Senior District Judge, Presiding

Argued and Submitted July 12, 2011
Portland, Oregon

Before: GOODWIN, PREGERSON, and M. SMITH, Circuit Judges.

Appellant Timothy Mort alleges that under the terms of his long-term disability

insurance policy, he is entitled to a higher monthly benefit payment than he is

currently receiving from Appellee United of Omaha Life Insurance Company

---

[*]This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

("United").  Mort filed a claim in the District of Oregon for breach of the insurance contract.  Finding United had presented the only plausible interpretation of the relevant policy terms, the district court granted United's motion for summary judgment and denied Mort's cross-motion.

Mort now appeals.  We have jurisdiction under 28 U.S.C. § 1291 and review de novo the district court's rulings on summary judgment.  *See City of L.A. v. San Pedro Boat Works*, 635 F.3d 440, 446 (9th Cir. 2011).  Because federal jurisdiction here is based on diversity, "we must follow Oregon law with respect to the interpretation of the insurance policy." *Alexander Mfg. v. Ill. Union Ins. Co.*, 560 F.3d 984, 986 (9th Cir. 2009).  For the reasons that follow, we affirm.  As the parties are familiar with the facts of the case, we do not recite them here except as necessary to our decision.

It is undisputed that Mort's disability began in February 2008 and that he is entitled to monthly benefit payments equal to 60 percent of his "basic monthly earnings" as of that date.  Because the policy expressly defines "basic monthly earnings," we must apply this definition, although its internal provisions may be subject to interpretation. *See Holloway v. Republic Indem. Co. of Am.*, 147 P.3d 329, 333 (Or. 2006).  Arguing that his 2007 income should not be included in the calculation of basic monthly earnings, Mort contends: (1) that United misinterprets

2

the policy's definition of the term; and (2) that such a calculation is affected by a separate provision restricting when certain policy changes can become effective. We disagree.

First, United applied the only plausible interpretation of the policy's definition for "basic monthly earnings." *See Hoffman Constr. Co. v. Fred S. James & Co.*, 836 P.2d 703, 706 (Or. 1992) (noting that a contract interpretation is plausible under Oregon law if it is reasonable when "examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole"). Per the plain terms of the policy's definition, Mort's basic monthly earnings are to be calculated based on the average gross monthly income that (a) he earned during "the prior two calendar years" and (b) was "verified by premium received by [United]." In calculating Mort's basic monthly earnings, United followed the policy's definition by averaging his gross monthly income from 2006 and 2007.

Mort's argument that his 2007 income was not "verified by premium" is not supported by the terms of the policy. It is undisputed that in March 2008 United received a premium payment from Mort that had been adjusted based on his 2007 income. Although this premium was eventually refunded, the definition's plain language requires only that a premium be "received" to serve as verification of income, not that it be accepted. *See Holloway*, 147 P.3d at 333 ("If the phrase in

3

question has a plain meaning, we will apply that meaning and conduct no further analysis."). Accordingly, Mort's suggestion that the refunded March premium did not serve to verify his 2007 income is unavailing.

Even looking at the verification requirement in a broader context, Mort's argument remains unpersuasive. The policy allows United to obtain income documentation directly from Mort at any time, without further verification, and "adjust [its] payment to the Employee based on this information." The broader context of the policy therefore does not suggest that the verification clause is an absolute bar to relying upon accurate income statements in calculating benefits, even if a related premium is not received. Thus, Mort's argument regarding the verification clause fails to suggest that United's interpretation conflicts with the specific language or the general context of the policy. *See Hoffman Constr. Co.*, 836 P.2d at 706.

Second, Mort's interpretation of the policy as excluding his 2007 income from gross monthly earnings is implausible because it relies on an unrelated policy term restricting when changes to his "classification, coverage or amount of [his] insurance" can become effective. This provision does not modify the policy's definition of basic monthly earnings. There is no reference within the definition to classification, coverage, or amount of insurance. It is undisputed that Mort was covered at the time of his disability under the policy's "buy-up plan" classification. The amount of

4

insurance provided under this classification was always a monthly benefit payment equal to 60 percent of Mort's basic monthly earnings as of the start of his disability. While Mort's 2007 income does have the effect of lowering his benefit payment, it does not change the amount of insurance coverage provided or the way in which the benefit is calculated.

Indeed, the definition of basic monthly earnings specifically identifies when this calculation is to be made and the yearly income to be relied upon. Accordingly, Mort's proposed interpretation of the policy is implausible because it conflicts with the specific language and general context of the policy. *See id.*; *see also Alexander Mfg.*, 560 F.3d at 987 ("[I]f one possible meaning of a term is not reasonable in light of the other provisions of the policy, leaving only the other reasonable interpretation of the term, there is no remaining ambiguity.").

**AFFIRMED.**