FILED
United States Court of Appeals
Tenth Circuit

February 27, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOSE CARDOZA,

        Plaintiff - Appellee,

v.

UNITED OF OMAHA LIFE
INSURANCE COMPANY,

        Defendant - Appellant.

No. 12-2033

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 1:09-CV-01003-MV-WPL)**

---

Steven T. Collis, Holland & Hart, LLP, Greenwood Village, Colorado (Michael S.
Beaver, Holland & Hart, LLP, Greenwood Village, Colorado, and Marcy G.
Glenn, Holland & Hart, LLP, Denver, Colorado, with him on the briefs), for
Defendant-Appellant.

David L. Duhigg, Duhigg, Cronin, Spring & Berlin, P.C., Albuquerque, New
Mexico, for Plaintiff-Appellee.

---

Before **KELLY**, **MURPHY**, and **GORSUCH**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I. Introduction

Jose Cardoza brought this lawsuit pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 to § 1461 ("ERISA"), challenging United of Omaha Life Insurance Company's ("United of Omaha") calculation of his long-term disability benefits ("LTD benefits"). United of Omaha answered, asserting its calculation was appropriate, and counterclaimed, demanding that Cardoza reimburse it for payments of short-term disability benefits ("STD benefits") which it claimed were miscalculated. On cross-motions, the district court granted Cardoza's motion for summary judgment and denied United of Omaha's motion, concluding United of Omaha's decision to calculate Cardoza's LTD benefits and recalculate his STD benefits as it did was arbitrary and capricious.

The district court erred in granting Cardoza's motion for summary judgment with respect to United of Omaha's LTD benefits calculation. The plain language of the long-term disability benefits policy ("LTD policy") instructed United of Omaha to base its calculation of Cardoza's LTD benefits on his earnings as verified by the premium it received. Thus, United of Omaha's decision to do so was reasonable and made in good faith. The district court did not err, however, in granting Cardoza's motion for summary judgment with respect to United of Omaha's recalculation of his STD benefits and demand for reimbursement. The plain language of the short-term disability benefits policy

("STD policy") instructed United of Omaha to base its calculation of Cardoza's STD benefits on his earnings. Thus, United of Omaha's decision to recalculate Cardoza's STD benefits based on his earnings verified by premium rather than his actual earnings was not reasonable. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court therefore **reverses** in part, **affirms** in part, and **remands** to the district court with instructions to conduct further proceedings consistent with this opinion.

## II. Background

Cardoza worked as a truck driver for Durango-McKinley Paper Company ("Durango-McKinley") until July 2008, when he was involved in an accident and became disabled. Durango-McKinley provided disability insurance to its employees, including Cardoza, through United of Omaha under an ERISA plan. Cardoza initially applied for and received STD benefits for a twelve-week period from July to September 2008. Under the STD policy, Cardoza's STD benefits were calculated using his "Weekly Earnings":

> Weekly Earnings means Your average gross weekly earnings received from the Policyholder [Durango-McKinley] during the Calendar Year immediately prior to the year in which Your Disability began . . . .

> It includes commissions, and overtime pay received from the Policyholder. It also includes employee contributions to deferred compensation plans. It does not include Policyholder contributions to deferred compensation plans, bonuses, shift differential, or other extra compensation received from the Policyholder.

-3-

Cardoza's weekly earnings and, therefore, his STD benefits, were calculated using his actual 2007 earnings of $61,881.47.  United of Omaha received this earnings information from Durango-McKinley in July 2008, during the STD claims process.

Cardoza then applied for LTD benefits, which were also approved.  Per the LTD policy, Cardoza's LTD benefits were calculated using his "Basic Monthly Earnings":

> Basic Monthly Earnings means Your average gross monthly earnings received from the Policyholder [Durango-McKinley] and verified by premium We have received during the Calendar Year immediately prior to the year in which Your Disability began . . .
>
> It includes commissions, and overtime pay received from the Policyholder.  It also includes employee contributions to deferred compensation plans. It does not include Policyholder contributions to deferred compensation plans, bonuses, shift differential, or other extra compensation received from the Policyholder.

United of Omaha based its calculation of Cardoza's basic monthly earnings and, therefore, his LTD benefits, not on his actual earnings in 2007, but on an annual earnings figure of $24,273.60.  United of Omaha asserted Durango-McKinley reported and paid premiums on this annual earnings figure in 2007.  United of Omaha also asserted that Durango-McKinley had classified Cardoza as an hourly employee whose annual earnings were less than $40,000, for purposes of both the LTD and STD policies.  Both policies provide that the premium payable for each period of coverage is the sum of the individual

-4-

premiums for each insured person and that individual premiums are based on an insured person's classification when a period of coverage begins.

Cardoza objected to United of Omaha's LTD benefits calculation and provided proof of his actual earnings in 2007. The bulk of Cardoza's 2007 income derived from "per ton" or "per load" earnings ("tonnage pay")—earnings he received based on the weight of the loads carried in his truck. The $24,273.60 earnings figure relied on by United of Omaha in calculating Cardoza's LTD benefits award did not include all of Cardoza's tonnage pay.

United of Omaha refused to adjust the LTD benefits calculation. It reiterated its position that the LTD benefits calculation was properly based on the earnings figure of $24,273.60 that Durango-McKinley had reported and on which it paid premiums in 2007. United of Omaha also asserted that Cardoza's tonnage pay was considered "extra compensation" under the LTD policy and, therefore, excluded from the LTD benefits calculation. In addition, United of Omaha notified Cardoza that it had mistakenly calculated his STD benefits for the same reasons. Thus, United of Omaha requested that Cardoza reimburse it for the alleged overpayment of STD benefits. Cardoza refused.

Cardoza unsuccessfully appealed United of Omaha's LTD benefits decision using United of Omaha's appeals process. After exhausting his administrative remedies, Cardoza filed suit against United of Omaha, challenging its calculation of his LTD benefits and seeking attorney's fees and costs. United of Omaha

answered and counterclaimed, arguing it properly calculated Cardoza's LTD benefits and Cardoza owed it for overpayments of STD benefits.

Following limited discovery, United of Omaha moved for judgment on the administrative record and Cardoza moved for summary judgment. The district court granted Cardoza's motion and denied United of Omaha's motion, concluding United of Omaha's decision to treat Cardoza's tonnage pay as "extra compensation," and, therefore, exclude it from the LTD and STD benefits calculations was arbitrary and capricious. United of Omaha then filed a motion to alter or amend the judgment, arguing the maximum monthly benefit provision in the LTD policy applicable to employees making less than $40,000 annually should be applied to Cardoza, and thereby limit his LTD benefits. The district court denied that motion. Finally, the district court granted Cardoza's motion for attorney's fees and costs. United of Omaha appeals each of these decisions, arguing its decision to calculate Cardoza's LTD and STD benefits using the 2007 earnings and classification information Durango-McKinley reported and paid premiums on was reasonable and made in good faith.

## III. Analysis

### A. STD and LTD Benefits Calculations

### 1. Standard of Review

This court reviews summary judgment orders de novo, applying the same standards as the district court. *LaAsmar v. Phelps Dodge Corp. Life, Accidental*

*Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010).  In an ERISA case like this, where both parties move for summary judgment and stipulate that no trial is necessary, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *Id.* (quotation omitted).  Moreover, this court accords no deference to the district court's decision. *Id.*

The parties agree United of Omaha's decisions are reviewed under the arbitrary and capricious or abuse of discretion standard because both the LTD and STD policies grant United of Omaha discretion and final authority to construe and interpret the terms of the policy. *See id.*  Under this standard, this court's "review is limited to determining whether the interpretation of the plan was reasonable and made in good faith." *Id.* (quotation omitted).

"Certain indicia of an arbitrary and capricious denial of benefits include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary." *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009) (quotation omitted).  "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker.  Substantial evidence requires more than a scintilla but less than a preponderance." *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992) (quotations omitted).

Because United of Omaha acts as both the claims administrator and payor of benefits, "we must weigh the conflict 'as a factor in determining whether there is an abuse of discretion,' according it more or less weight depending on its seriousness." *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1158 n.1 (10th Cir. 2010) (*quoting Metro. Life Ins. Co. v. Glenn*, 544 U.S. 105, 115 (2008)). The seriousness of a conflict of interest is "proportionate to the likelihood that the conflict affected the benefits decision." *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1358 (10th Cir. 2009). "A conflict is more important when 'circumstances suggest a higher likelihood that it affected the benefits decision,' but less so when the conflicted party 'has taken active steps to reduce potential bias and to promote accuracy.'" *Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1155 (10th Cir. 2009) (*quoting Glenn*, 544 U.S. at 117-18).

Cardoza claims United of Omaha's conflict of interest and procedural irregularities (i.e., an initial failure to provide Cardoza its internal guidelines, protocols, and procedures in making claims determinations) compromised its fiduciary duty to act solely in the interest of the participant and beneficiaries. Thus, Cardoza asserts, the deference this court would ordinarily accord to United of Omaha's benefits decision should be lessened to neutralize the untoward influence of United of Omaha's conflict, which contaminated its decision-making process. United of Omaha argues that, because its conflict played no role in its benefits calculations, this court should give it only minimal, if any, consideration.

Cardoza was granted limited discovery in this case in order to obtain information relevant to United of Omaha's conflict of interest and to determine why United of Omaha initially claimed there were no internal guidelines, protocols, and procedures concerning the determination of Cardoza's LTD benefits. As a result, United of Omaha's Director of Customer Service in the Clinical Services Department of its Claims Division attested to the following facts, which show the steps United of Omaha took to minimize its conflict of interest: (1) "claims analysts are not allowed access to claim reserve information and are not provided actuarial or financial information regarding their claims handling or the effect of their claims handling on company financial results" and (2) "all claim analysts are physically segregated from the Premium, Sales, Underwriting, and Actuary departments, as well as Quality Auditors." Additionally, "claims personnel are paid a salary or hourly wage, and are not paid any incentive compensation based on the payment or denial of claims" and "any bonus pay is based on company-wide performance." Thus, the record shows United of Omaha has taken active steps to reduce potential bias and to promote accuracy. Cardoza has provided no evidence to the contrary. Thus, this court will consider United of Omaha's conflict of interest as a factor in determining whether its decisions were arbitrary and capricious. However, because United of Omaha has taken active steps to reduce potential bias and promote accuracy, this court will accord the conflict little weight in making that determination.

## 2. LTD Benefits Calculation

The terms of the LTD policy and the evidence in the administrative record show United of Omaha's calculation of Cardoza's LTD benefits was reasonable and made in good faith. Courts review ERISA claims as they "would any other contract claim by looking to the terms of the plan and other evidence of the parties' intent. If plan documents are reviewed and found not to be ambiguous, then they may be construed as a matter of law." *Hickman v. GEM Ins. Co.*, 299 F.3d 1208, 1212 (10th Cir. 2002); *see also Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 299-302 (2009) (stating the text of the plan documents controls). In making this determination, this court "consider[s] the common and ordinary meaning as a reasonable person in the position of the plan participant would have understood the words to mean." *Scruggs v. ExxonMobil Pension Plan*, 585 F.3d 1356, 1362 (10th Cir. 2009) (quotation and alteration omitted).

In this case, LTD benefits are calculated based on an insured's basic monthly earnings. According to the LTD policy, "Basic Monthly Earnings means Your average gross monthly earnings received from the Policyholder and verified by premium We have received during the Calendar Year immediately prior to the year in which Your Disability began." Because Cardoza's disability began in 2008, his basic monthly earnings were his "average gross monthly earnings received from [Durango-McKinley] and verified by premium" United of Omaha

-10-

received during 2007. The "verified by premium" clause of the LTD policy is unambiguous and "reasonably susceptible to [only] one meaning." *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1250 (10th Cir. 2007) (quotations omitted). The plain text of the LTD policy instructs United of Omaha to calculate Cardoza's LTD benefits based on his earnings as verified by premium received by United of Omaha during 2007.

The record supports United of Omaha's assertion Cardoza's earnings as verified by the premium United of Omaha received during 2007 were $24,273.60 annually. The record contains a screenshot, provided by United of Omaha, which shows the contents of the "earnings tab" in Cardoza's file on its computer system. The information on the tab indicates Cardoza's annual earnings were "$23,568.50," effective February 1, 2007, when the LTD policy took effect, but increased to "$24.273.60" effective June 4, 2007. In a letter sent to Cardoza during the LTD claims process, United of Omaha asserted the information on this screenshot "verifies the employer's report of income and what premium was received on for the calendar year 2007." Another screenshot provided by United of Omaha also reflects an annual basic salary of $24,273.60 and shows Cardoza was classified as an "A005" employee.[1] United of Omaha asserts this shows Cardoza was classified as an "Eligible Hourly Employee[] whose Annual

[1]The STD claim form submitted by Durango-McKinley in July 2008 also indicates Cardoza was classified as "A005."

-11-

Earnings are less than $40,000." Pursuant to both the LTD and STD policies, individual premiums are based on an insured's classification when a period of coverage begins.

In addition, an internal United of Omaha record of a December 2008 phone call between a claim handler and an employee who was researching the calculation of Cardoza's benefits states: "Benefits were calculated based on the salary we received premium on. [Durango-McKinley] did not report the 'per load' earnings for this claimant, therefore benefits would reflect the salary as billed." Moreover, in several letters sent by United of Omaha to Cardoza during the claims and administrative appeals process, United of Omaha stated that Durango-McKinley paid premiums in 2007 based on the $24,273.60 earnings figure and Cardoza's classification as an hourly employee earning less than $40,000 annually.

Finally, Cardoza does not point to any evidence which calls into question United of Omaha's assertion that it received premiums based on the $24,273.60 earnings figure and Cardoza's classification as an hourly employee earning less than $40,000 annually. Indeed, Cardoza does not dispute, nor does the record show he has ever disputed, those assertions. In fact, Cardoza expressly admitted at the summary judgment stage that Durango-McKinley paid premiums based on the $24,273.60 figure.

Relying on *Mort v. United of Omaha Life Ins. Co.*, 444 F. App'x 208, 209-10 (9th Cir. 2011), Cardoza argues the "verified by premium" clause is not "an absolute bar to relying on accurate income statements in calculating benefits." In *Mort*, the Ninth Circuit analyzed "verified by premium" language similar to that relied on by United of Omaha in this case and concluded:

> The policy allows United to obtain income documentation directly from [the insured] at any time, without further verification, and "adjust [its] payment to the Employee based on this information." The broader context of the policy therefore does not suggest that the verification clause is an absolute bar to relying upon accurate income statements in calculating benefits, even if a related premium is not received.

*Id.* at 210. Cardoza argues that, like in *Mort*, the LTD policy in this case allowed United of Omaha to obtain income documentation directly from Durango-McKinley at any time, without further verification, and change premium rates when it discovered a change in eligibility for benefits under the policy. Thus, Cardoza argues, like in *Mort*, the broader context of the LTD policy suggests the verification clause is not an absolute bar to relying upon accurate income statements in calculating benefits, regardless of the premium United of Omaha received. Moreover, Cardoza asserts, prior to his claim for LTD benefits, United of Omaha obtained accurate income statements and had knowledge of Cardoza's actual 2007 earnings as of July 2008, when Durango-McKinley filed his claim for STD benefits. He further asserts that, despite this knowledge, and

despite having the ability to do so, United of Omaha did not change its premium rates.

Cardoza's reliance on *Mort* is misplaced. In determining that the broader context of the policy in that case did not suggest the verification clause was an absolute bar to relying on accurate income statements in calculating benefits, the Ninth Circuit noted that the policy allowed United of Omaha to "adjust [its] payment to the Employee" based on updated income documentation. *Id.* There is no such clause in the LTD policy in this case. While the LTD policy allowed United of Omaha to obtain income documentation directly from Durango-McKinley at any time, without further verification, there is no provision allowing United of Omaha to adjust its payment to the employee based on that information. United of Omaha was permitted merely to change its premium rates if it discovered a change in eligibility for benefits under the policy.

Moreover, whether a change in Cardoza's premium rates was justified based on United of Omaha's receipt of information in July 2008, which showed his actual earnings in 2007 were much higher than $24,273.60, is irrelevant. Cardoza's LTD benefits calculation is based on earnings "verified by premium" received by United of Omaha during the previous calendar year, in this case, 2007. Thus, any change in premiums that may have been warranted as of July 2008 would not affect the LTD benefits calculation in this case.

Cardoza also argues it was United of Omaha's error that led Durango-McKinley to pay the "wrong premium." He argues it was United of Omaha, not Durango-McKinley, that determined the premium using its knowledge of the nature of Durango-McKinley's business and its own expertise in underwriting insurance policies. Thus, he asserts, the district court was correct in concluding "[t]he issue with premiums received is between Durango-McKinley and United of Omaha" and Cardoza "should not be penalized for an error that from the record appears to be due to United of Omaha's underwriters not initially considering tonnage pay."

In making the latter statement, the district court relied on an internal United of Omaha record of a December 2008 phone call between a claim handler and an employee who was researching the calculation of Cardoza's benefits. The employee wrote: "Benefits were calculated based on the salary we received premium on. [Durango-McKinley] did not report the 'per load' earnings for this claimant, therefore benefits would reflect the salary as billed," and "It is questionable as to whether or not the 'per load' amount was initially taken into consideration when Underwriting rated the case. Since commission[s] are included under the Definition of Earnings, were 'per load' wages to be included under commissions? If so, we would need clarification from Underwriting." These statements do not show any error was made in determining the premium owed in connection with Cardoza's disability insurance, let alone an error made

-15-

by United of Omaha's underwriters. The statements merely raise the question whether tonnage pay was included as commissions when United of Omaha wrote the coverage, without answering the question. Indeed, the statement indicates that not all of Cardoza's tonnage pay was reported by Durango-McKinley when it states "[Durango-McKinley] did not report the 'per load' earnings" for Cardoza.

Moreover, Cardoza fails to point to any other evidence in the record supporting his assertion the determination of the premium due in connection with his disability insurance was an error made by United of Omaha. The evidence is to the contrary. In three separate letters sent to Cardoza during the claims and administrative appeals process, United of Omaha stated it determined the premium due in connection with his disability insurance based on information provided by Durango-McKinley, which, United of Omaha stated, classified Cardoza as an hourly employee earning less than $40,000 a year and reported his annual earnings in 2007 as $24,273.60. Cardoza does not contest those assertions on appeal and this court is unable to find any record evidence that Cardoza has ever contested those assertions. Both the LTD and STD policies required Durango-McKinley to furnish information regarding "persons insured by classification" and "any other insurance information which [United of Omaha] may reasonably request" for the purpose of policy administration. Furthermore, both policies allowed United of Omaha to "rely on the accuracy and completeness of any information furnished by [Durango-McKinley] or an insured person."

-16-

Finally, the record shows that when United of Omaha discovered the discrepancy between Cardoza's reported and actual earnings, it gave Durango-McKinley the option of paying back-premiums to insure its drivers, including Cardoza, for their actual earnings, but Durango-McKinley refused.[2]

In sum, the plain text of the LTD policy instructs United of Omaha to calculate Cardoza's LTD benefits based on his earnings "verified by premium" received by United of Omaha during 2007. The record supports United of Omaha's assertion it received premiums from Durango-McKinley during 2007 based on reported annual earnings of $24,273.60 and the fact Cardoza was classified as an hourly employee earning less than $40,000 a year. Thus, United of Omaha's decision to base its LTD benefits calculation on that figure was reasonable and made in good faith and, therefore, not arbitrary and capricious.[3]

[2]Cardoza also asserts United of Omaha failed to appeal the district court's conclusion United of Omaha's decision to treat Cardoza's tonnage pay as "extra compensation" for purposes of calculating his LTD and STD benefits was arbitrary and capricious. Thus, he argues, the district court's ruling on that issue stands and the arguments United of Omaha makes on appeal must be viewed against the backdrop of that ruling. United of Omaha admits it has abandoned its so-called "tonnage argument" on appeal. Thus, we need not address the arguments Cardoza makes on appeal concerning United of Omaha's tonnage argument. Moreover, to the extent it is relevant, this court has considered the district court's conclusion regarding United of Omaha's tonnage argument in reviewing United of Omaha's argument on appeal.

[3]United of Omaha also appeals the district court's denial of its motion to alter or amend the judgment. In light of this court's conclusion United of Omaha's decision to calculate Cardoza's LTD benefits using the earnings of $24,273.60, as verified by premium it received in 2007, was not arbitrary and

(continued...)

### 3. STD Benefits Calculation

The terms of the STD policy and the evidence in the administrative record show United of Omaha's recalculation of Cardoza's STD benefits based on the annual earnings figure of $24,273.60, which Durango-McKinley paid premiums on in 2007, is not reasonable. Pursuant to the STD policy, Cardoza's STD calculation is based on his weekly earnings. According to the policy, "Weekly Earnings means Your average gross weekly earnings received from [Durango-McKinley] during the Calendar Year immediately prior to the year in which Your Disability began." Thus, the STD policy lacks the "verified by premium" language contained in the LTD policy. This language in the STD policy is unambiguous and "reasonably susceptible to [only] one meaning." *Miller*, 502 F.3d at 1250 (quotations omitted). It instructs United of Omaha to calculate Cardoza's STD benefits based on his earnings, as defined by the STD policy, for 2007. It is undisputed Cardoza's earnings for 2007 were $61,881.47 and that United of Omaha had this earnings information at the time it calculated his STD benefits.[4] Thus, United of Omaha's decision to recalculate Cardoza's

---

[3](...continued)
capricious, we need not reach this issue. United of Omaha's LTD calculation using that figure puts Cardoza's monthly benefit at less than the maximum monthly benefit applicable to hourly employees earning less than $40,000 per year.

[4]On appeal, United of Omaha does not argue any portion of Cardoza's actual earnings were excludable from the STD calculation based on the definition

(continued...)

STD benefits based on the earnings figure upon which Durango McKinley paid premiums in 2007 is contrary to the plain language of the STD policy, and, therefore, not reasonable and arbitrary and capricious. Cardoza need not return any portion of the STD payments he received, which were calculated using the appropriate earnings figure.

United of Omaha argues, just as it did in connection with the LTD benefits calculation, that its calculation of Cardoza's STD benefits using the classification information and $24,273.60 earnings figure it asserts Durango-McKinley reported and paid premiums on in 2007, was reasonable. It asserts the STD policy allowed it to "rely on the accuracy and completeness of any information furnished by the Policyholder or an insured person." Thus, it argues, even without the "verified by premium" language, the plain text of the policy requires Cardoza to return the alleged STD overpayment. Moreover, it asserts, Durango-McKinley should not be allowed to under-report earnings (and pay lower premiums) when purchasing STD coverage, only to report higher earnings (and expect payment of higher benefits) when claims are actually filed.

These arguments do not support United of Omaha's position it was reasonable to calculate Cardoza's STD benefits based on the earnings figure

---

[4](...continued)
of Weekly Earnings, which expressly excludes "Policyholder contributions to deferred compensation plans, bonuses, shift differential, or other extra compensation received from the Policyholder."

Durango-McKinley reported and paid premiums on in 2007. The plain language of United of Omaha's own STD policy unambiguously instructs United of Omaha to calculate Cardoza's STD benefits based on earnings alone. Whether Durango-McKinley reported or paid premiums on a different earnings figure is irrelevant. *See Allison v. Bank One-Denver*, 289 F.3d 1223, 1236 (10th Cir. 2002) ("We have repeatedly rejected efforts to stray from the express terms of a plan, regardless of whom those express terms may benefit.").

## B. Attorney's Fees and Costs

The parties agree this court reviews the district court's fee decision for an abuse of discretion. *Thorpe v. Ret. Plan of the Pillsbury Co.*, 80 F.3d 439, 445 (10th Cir. 1996). A fee claimant need not be a prevailing party to be eligible for an award of attorney's fees and costs under ERISA. *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2152 (2010). A court may award fees and costs under 29 U.S.C. § 1132(g)(1) as long as the fee claimant has achieved "some degree of success on the merits." *Id.*

This court has established five factors a court may consider in deciding whether to exercise its discretion to award attorney's fees and costs: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to

resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Gordon v. U.S. Steel Corp.*, 724 F.2d 106, 109 (10th Cir. 1983). No single factor is dispositive and a court need not consider every factor in every case. *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1209 n.17 (10th Cir. 1992).

The district court based its decision to grant Cardoza's motion for attorney's fees and costs largely on its conclusions United of Omaha's LTD benefits calculation and its STD benefits recalculation were not reasonable and not made in good faith. This court has concluded, however, that United of Omaha's LTD calculation was reasonable and made in good faith. Because this court's decision so significantly alters the district court's ruling, on remand the court must address anew all issues related to the award of attorney's fees and costs.[5]

## IV.   Conclusion

For the foregoing reasons this court **reverses** the district court's grant of summary judgment for Cardoza with respect to United of Omaha's LTD benefits calculation based on our conclusion the LTD benefits calculation was reasonable and made in good faith. This court **affirms** the district court's grant of summary

---

[5]We need not, therefore, address United of Omaha's argument that the fees the district court granted were unreasonable and unsupported by the evidence or its argument that it is entitled to fees and costs.

judgment for Cardoza with respect to United of Omaha's STD benefits recalculation and request for reimbursement based on our conclusion the STD benefits recalculation was not reasonable. Finally, this court **remands** for reconsideration of the issue of attorney's fees and costs.