FILED
United States Court of Appeals
Tenth Circuit

February 4, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARGIE FITE,

    Plaintiff-Appellant,

v.

BAYER CORPORATION; BAYER
CORPORATION DISABILITY PLAN;
BAYER CORPORATION ERISA
REVIEW COMMITTEE; MATRIX
ABSENCE MANAGEMENT, INC.,

    Defendants-Appellees.

No. 13-7027
(D.C. No. 6:12-CV-00025-RJC)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**BACHARACH**, Circuit Judge.

Margie Fite appeals the district court's grant of summary judgment to

defendants-appellees (collectively, "Bayer") on her ERISA[1] claim for denial of

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]    Employee Retirement Income Security Act, 29 U.S.C. § § 1001-1461.

short-term disability (STD) benefits under Bayer's Disability Plan (the Plan). The district court determined that Bayer did not abuse its discretion when it concluded that Ms. Fite's depression and anxiety constituted were excluded from coverage as "[e]mployment-related mental or emotional disabilities," Aplee. Suppl. App., Vol. II at 428, and she was therefore not entitled to benefits for the additional period she claimed. Ms. Fite raises five general arguments on appeal: (1) the district court applied the wrong standard of review; (2) Bayer failed to give her specific reasons for its denial of benefits; (3) Bayer failed to give her a full and fair review; (4) the Plan language on which Bayer relied to deny benefits is ambiguous; and (5) Bayer erred in making a blanket exclusion in its Plan for emotional and mental disabilities that are employment-related. We affirm the grant of summary judgment to Bayer.

## 1. Background

Ms. Fite had worked as a pharmaceutical representative for Bayer for several years when, based on a psychologist's diagnosis of major depressive disorder and generalized anxiety disorder, she took leave and applied for STD benefits under Bayer's Plan. Ms. Fite applied for benefits on June 9, 2009, and began receiving them the next day. Under the Plan, a participant could receive STD benefits for no more than twenty-six weeks, so Ms. Fite could not receive benefits past December 8, 2009.

Matrix Absence Management, Inc. acted as Bayer's third-party administrator for purposes of making an initial decision on benefits. Based on medical information

- 2 -

it received from Ms. Fite's healthcare providers,[2] Matrix extended Ms. Fite's benefits through October 9. But after reviewing the October 7 report from an independent psychiatrist, Dr. Goldman, who reviewed Ms. Fite's medical records, Matrix determined that the medical evidence did not support the continuation of benefits beyond October 9. Matrix informed Ms. Fite of its determination and gave her time to submit additional evidence, which she did. Matrix provided the additional evidence to Dr. Goldman, but it did not alter his conclusion that the objective medical evidence was not sufficient to establish a disability.

On November 25, 2009, Matrix sent Ms. Fite a letter informing her that "[a]t this time, we have not received satisfactory objective medical evidence to support your Short Term Disability claim beyond October 9, 2009. Therefore, your request for benefits for the period beyond October 9, 2009 has been denied and your claim has been closed." Corrected Aplt. App. at 104. The letter told Ms. Fite that she could seek a review of this determination.

Ms. Fite submitted additional evidence to Matrix from her healthcare providers and, in May 2010, formally sought a review of Matrix's November 25 determination. As part of this review, Matrix obtained a report from a second psychiatrist, Dr. Dalpe, who independently reviewed Ms. Fite's medical records and spoke with her primary care physician. Based on his review, Dr. Dalpe concluded that Ms. Fite

---

[2]     Ms. Fite was treated by a psychologist, a psychiatrist, and an internist (her primary care physician) during the relevant period.

"has no objective evidence of [a] functional psychiatric impairment that would prevent her from performing full duty work" and that she "is not taking any medications that would impact her ability to work." *Id.* at 79, 80.

Accordingly, on June 25, 2010, Matrix sent Ms. Fite a letter informing her that it was upholding its initial decision to deny her additional STD benefits for the period of October 10 through December 8, 2009. The letter discussed Dr. Dalpe's report and enclosed a copy of the report for Ms. Fite's review.

Ms. Fite then filed an appeal with Bayer's ERISA Committee challenging the conclusions in Dr. Dalpe's report and submitting additional medical evidence. As part of its appellate review, the Committee obtained an independent review of Ms. Fite's records from a third psychiatrist, Dr. Burstein. Dr. Burstein concluded that Ms. Fite had not recovered from "the syndrome of acute and severe anxiety and depression" with which she was diagnosed in June 2009 and that there was "no valid or documented medical/psychiatric reason to interrupt her disability which started June 10, 2009." *Id.* at 243. Having reviewed only Ms. Fite's records, Dr. Burstein recommended that Ms. Fite "have an independent psychiatric evaluation for the purpose of obtaining an objective assessment of her current treatment and mental function." *Id.* at 244.

Accordingly, a fourth psychiatrist, Dr. Kelley, examined Ms. Fite in December 2010. Following his evaluation of her and his review of her medical records, Dr. Kelley submitted a fourteen-page report in which he concluded that Ms. Fite was

disabled. Dr. Kelley suggested that the reason Drs. Goldman and Dalpe had concluded otherwise was because "the pathology was there but the method of documenting it was inadequate." *Id.* at 258.

Of significance to the Committee's ultimate decision to deny an additional period of benefits, however, were several portions of Dr. Kelley's report that attributed Ms. Fite's disability to her job at Bayer. Bayer's Plan excluded from coverage "disabilities resulting from . . . [e]mployment-related mental or emotional disabilities." Aplee. Suppl. App, Vol. II. at 428. Dr. Kelley's report reflected that Ms. Fite referred to her job many times when discussing her anxiety and depression, and following the description of Ms. Fite's panic attacks, Dr. Kelley stated that "[m]ost of the episodes were work related in the development of her symptoms, that became disabling." Corrected Aplt. App. at 248. Dr. Kelley also stated in his diagnosis that Ms. Fite's "main stressor is work." *Id.* at 250.

In light of his report, the Committee sent Dr. Kelley a letter with this follow-up question:

> Following your review of records and examination of Ms. Fite, and based upon your findings, within a reasonable degree of psychiatric certainty, do you find that Ms. Fite's current complaints and diagnoses are causally related (arising from) her employment at Bayer Corporation and, if so, to what degree was her employment/position at Bayer responsible for causing her current disability?
>
> Position at Bayer was responsible for causing current disability:
> Yes ___ No ___
>
> If yes, to what degree was position/employment at Bayer a causal factor? 0-25% ___ 26-50% ___ 51-75% ___ 76-100% ___

*Id.* at 259. In response, Dr. Kelley marked "yes," the position at Bayer was responsible for causing Ms. Fite's current disability, and it was "76-100%" responsible. *Id.*

On February 24, 2011, the Committee sent Ms. Fite its final decision on her appeal from the denial of STD benefits beyond October 9, 2009. The Committee discussed the reports from Dr. Burstein and Dr. Kelley and said that Dr. Kelley's finding that Ms. Fite's position at Bayer was responsible for causing her disability was significant because the Plan excluded STD benefits for disabilities resulting from employment-related mental or emotional disabilities. In light of this finding, the Committee concluded that "it was appropriate to cease Ms. Fite's short term disability benefits effective as of October 9, 2009. Based on the diagnosis of Dr. Kell[e]y, *no* benefits should have been paid under the Plan." *Id.* at 48-49.

Ms. Fite protested the decision in an April 2011 letter to the Committee to which she attached a letter from her psychologist that she said showed that her disabilities were not work-related. She asked the Committee to reconsider its denial of benefits. Bayer's counsel responded in a letter explaining that the administrative appeals process under Bayer's Plan was concluded when the Committee issued its February 24, 2011, decision, and if Ms. Fite wished to challenge that decision further,

she could bring an ERISA action in court. Ms. Fite then brought this action to challenge the denial of benefits beyond October 9.[3]

Bayer asks that the correspondence between Ms. Fite and Bayer that followed the Committee's final decision be stricken from the appellate record because it was not part of the administrative record that the Committee reviewed in reaching its final decision on benefits.[4] Bayer is correct that "a plan participant is not entitled to a second chance to prove his disability," so we may not consider the correspondence as it may relate to "the merits issue of disability." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1159 (10th Cir. 2010) (internal quotation marks omitted). But Bayer cites no authority to suggest that we may not acknowledge that the letters were sent, i.e., that Ms. Fite asked Bayer to reconsider and that Bayer told her there was no further recourse under the Plan, so we see no need to strike them from the record.

## 2. Standard of Review

"This Court reviews the plan administrator's decision to deny benefits to a claimant, as opposed to reviewing the district court's ruling." *Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1231 (10th Cir. 2012) (internal quotation marks omitted). The parties agree that Bayer's decision is reviewed under an arbitrary and capricious

---

[3] Ms. Fite also asserted a claim for failure to provide copies of the Plan and the Summary of Plan Description, but she later stipulated to its dismissal.

[4] Bayer made a similar request to the district court, which struck its request as moot.

standard because the Plan gave Bayer discretionary authority to determine the eligibility for benefits and to construe the terms of the Plan. *See id.* at 1231-32. But Ms. Fite contends that the district court gave Bayer too much deference because the court failed to consider Bayer's conflict of interest as both the decider and the payor of benefits. *See, e.g., Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008) (recognizing inherent conflict of interest when the employer "both funds the plan and evaluates the claims"). We need not decide whether the district court erred in this respect, however, because we will directly review Bayer's decision ourselves.

Bayer concedes that it had an inherent conflict of interest, so "we must weigh the conflict as a factor in determining whether there was an abuse of discretion, according it more or less weight depending on its seriousness," *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1201 (10th Cir. 2013) (internal quotation marks omitted). We will give the conflict more weight "when circumstances suggest a higher likelihood that it affected the benefits decision," and we will give it less weight "when the conflicted party has taken active steps to reduce potential bias and to promote accuracy." *Id.* (internal quotation marks omitted). Bayer took active steps to reduce any potential bias and to promote accuracy: it sought an independent review of Ms. Fite's medical records by a different psychiatrist at each of the three levels of review it provided; and it obtained an independent psychiatric evaluation of Ms. Fite from a fourth psychiatrist before reaching its final decision. We therefore give the conflict-of-interest factor limited weight in determining whether Bayer

abused its discretion.  *See Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1193 (10th Cir. 2009) (giving limited weight to conflict of interest because plan administrator sought independent examination of claimant and independent review of her records).

### 3.  Ms. Fite's Challenges to Bayer's Decision

Ms. Fite first contends that Bayer failed to give her specific reasons for its denial of benefits.  Her true objections, however, appear to be that:  (1) the reason Bayer gave for the initial denial of benefits (that the objective medical evidence did not support the existence of a disability) was different from the reason it gave in its final decision on appeal (that her disability was work-related and therefore excluded from coverage under the Plan); and (2) Dr. Kelley did not provide sufficient reasons for his conclusion that her disability was work-related.  Both of these arguments are easily disposed of in light of Ms. Fite's stipulation of fact in the district court that "[s]he stopped working after June 9, 2009 following complaints of depression and severe anxiety disorder *as a result of the stress from her job*."  Aplee. Suppl. App., Vol. I at 19 (Jt. Status Report & Discovery Plan) (emphasis added).

While it is true that Bayer changed the rationale for its denial of benefits between its initial and its final decisions, the change is readily explained by the new evidence that came to light only during Ms. Fite's appeal of the initial determination. This is not a case like those Ms. Fite cites in her appellate brief in which the plan administrator asserts an entirely new rationale for its decision during the litigation

- 9 -

that it did not rely on in the administrative process. *See, e.g., Spradley v. Owens-Ill. Hourly Emps. Welfare Benefit Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012) ("[T]he federal courts will consider only those rationales that were specifically articulated in the administrative record as the basis for denying a claim. . . . A plan administrator may not treat the administrative process as a trial run and offer a post hoc rationale in district court." (internal quotation marks omitted)). And Ms. Fite could not have been prejudiced by Bayer's ultimate reliance on Dr. Kelley's opinion that her disability was caused by her job when she, herself, has stipulated that her depression and anxiety disorder resulted from the stress of her job. This stipulation also undercuts her argument that Dr. Kelley did not provide specific reasons for his opinion (an argument that also ignores the evidence in Dr. Kelley's earlier report).

Equally unavailing is Ms. Fite's contention that she was not given a full and fair review. First, Ms. Fite's complaint that the Committee's letter of February 24, 2011, did not tell her what additional information she could submit to address the Committee's adverse decision relies on a regulation that does not apply to a final decision following an administrative appeal. *Compare* 29 C.F.R. § 2560.503-1(g)(iii) (requiring that initial adverse determination include "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary"), *with id.* § 2560.503-1(h)(2) (setting forth requirements for full and fair review of adverse benefit determination). *See also*, *Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141,

1153 (10th Cir. 2009) (stating that § 2560.503-1(g) "applies only to denials of benefits, not denials of appeals").

Second, Ms. Fite's argument that the Committee erred in relying on Dr. Kelley's opinion—because he did not recite any objective evidence to support it and because there was conflicting evidence as to whether her disability was work-related—ignores the fact that Bayer had discretion under the Plan to resolve all factual questions of disability, including conflicting evidence, and the fact that Ms. Fite's stipulation conceded the truth of Dr. Kelley's opinion. Finally, Ms. Fite cites no authority for her contention that Bayer was required to explain to Dr. Kelley what degree of causal connection between her job and her disability would lead to a denial of benefits before asking him to give an opinion on the connection. And as Bayer points out, had Dr. Kelley known how his opinion would affect the grant or denial of benefits, it would have weakened—not strengthened—the independence of his opinion.

Ms. Fite also challenges Bayer's decision on the ground that the exclusionary language in the Plan concerning disabilities "resulting from . . . [e]mployment-related mental or emotional disabilities," Aplee. Suppl. App. at 428, is ambiguous. "Whether an ERISA plan term is ambiguous depends on the common and ordinary meaning as a reasonable person in the position of the plan participant would have understood the words to mean." *Foster*, 693 F.3d at 1237 (internal quotation marks omitted). Contrary to Ms. Fite's assertion, this court did not find that the terms

- 11 -

"caused by, contributed to by, or resulting from" were ambiguous in *Fought v. Unum Life Insurance Company of America*, 379 F.3d 997, 1008-09 (10th Cir. 2004) (per curiam) (internal quotation marks omitted), *abrogated in part on other grounds by Glenn*, 554 U.S. at 116, *as recognized in Holcomb*, 578 F.3d at 1192.  Rather, we gave the terms their common and ordinary meaning, *id.*, but concluded that the plan administrator had stretched the chain of causation too far, *id.* at 1009-10.  The same is not true here.  And Bayer was under no obligation to give "guidance" to Dr. Kelley, Aplt. Br. at 18, about either the meaning of the terms used in its letter asking him whether Ms. Fite's job at Bayer caused her disability or the effect that his answer might have on her eligibility for benefits.

Ms. Fite's final challenge to Bayer's decision is that, as a matter of policy, Bayer should not have excluded from the Plan's coverage all employment-related emotional and mental disabilities.  Ms. Fite admits that she did not raise this issue in the district court, and she cites no authority to support it.  We therefore decline to address the issue.  *See Bison Pipeline, LLC v. 102.84 Acres of Land*, 732 F.3d 1215, 1220 (10th Cir. 2013) ("[A] litigant's failure to raise an argument before the district court . . . results in forfeiture on appeal." (second alteration in original) (internal quotation marks omitted)); *United States v. Banks*, 451 F.3d 721, 728 (10th Cir. 2006) (declining to address argument that was not supported with any legal authority).

- 12 -

4.  Conclusion

Bayer's request that we strike pages 10-15 of the Corrected Appellant's Appendix, consisting of the correspondence between Ms. Fite and Bayer after the Committee's February 2011 final decision, is denied.  The judgment of the district court is affirmed.

Entered for the Court

Wade Brorby
Senior Circuit Judge