# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-1520

LISA PAKOVICH,

*Plaintiff-Appellant,*

*v.*

BROADSPIRE SERVICES, INC.,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 05 C 445—**Michael J. Reagan**, *Judge.*

———————

ARGUED APRIL 14, 2008—DECIDED JULY 24, 2008

———————

Before FLAUM, EVANS, and TINDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* Plaintiff Lisa Pakovich brought an ERISA suit after Defendant Broadspire Services determined she was no longer entitled to long term disability benefits. The lower court found in Pakovich's favor, determining that Broadspire had unreasonably concluded that Pakovich was able to perform the essential functions of her sales position with Verizon Wireless, the standard for receiving disability benefits for the first 24 months ("own occupation" standard). The district court went further, however, and also determined that Pakovich was not entitled to disability benefits beyond

the 24 month mark, where benefits were only available if Pakovich was disabled from all occupations ("any occupation" standard). Pakovich appeals this latter ruling, arguing that the district court's decision should be reversed and her benefits reinstated. For the following reasons, we vacate that portion of the district court's decision appealed by Pakovich, with orders that the determination of long term disability under the "any occupation" standard be remanded to the Plan Administrator.

## I. Background

Pakovich worked as a retail sales representative for Verizon and applied for long term disability benefits in September 2002 following a series of back surgeries. At the time, the long term disability plan ("the Plan") was administered by Kemper National Services, which in October 2002, found Pakovich to have been disabled as of July 17, 2002. Under the long term disability policy's terms, benefits for the first 24 months were based upon Pakovich's inability to perform "the Essential Functions of [her] Regular Occupation," with continuing benefits beyond the 24 month mark depending upon Pakovich being "prevented from performing the Essential Functions of any Gainful Occupation that [her] training, education and experience would allow [her] to perform." The policy also provided that any benefits paid out by the Plan would be offset by the receipt of Social Security benefits. In November 2003, Pakovich was found to be "totally disabled" by the Social Security Administration, and thus was approved for Social Security benefits retroactive to July 2002. By the end of 2003, Broadspire was administering the Plan.

Between February 2002 and March 2004, Pakovich was examined by a host of different physicians, some of whom noted that Pakovich was only capable of performing sedentary work. The records from these examinations were then reviewed by physicians selected by Broadspire. In February 2004, Pakovich received a letter from Broadspire indicating that, based upon the information at its disposal, it did not appear that Pakovich was disabled under the Plan's "own occupation" standard. She also received a separate letter the same day informing her that Broadspire would be conducting an evaluation in the future to determine whether Pakovich would continue to qualify for long term disability after July 17, 2004 under the "any occupation" standard. This "any occupation" evaluation, however, never occurred. Instead, on April 22, 2004, Pakovich was informed by letter that after reviewing all her medical documentation, Broadspire had concluded that she was no longer disabled under the "own occupation" standard and that her benefits would be discontinued after April 30, 2004. Pakovich appealed the decision, and on June 22, 2004, was awarded further benefits from May 1 until May 14, 2004 due to a recent knee surgery, but nothing beyond that date. Pakovich then brought suit in federal court pursuant to Section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), challenging Broadspire's termination of her benefits.

In November 2006, the district court issued a memorandum and order on Pakovich's Motion for Judgment under FED. R. CIV. P. 52 and Broadspire's Motion for Summary Judgment. The court concluded that Broadspire's decision to terminate Pakovich's long term disability benefits was arbitrary and capricious. The district court

noted that many physicians had determined that Pakovich was only capable of performing sedentary work, and found that Broadspire had unreasonably characterized Pakovich's current position as one involving "light work," when by Defendant's own analysis of the position, it entailed lifting requirements near the high end of what is classified as "medium work."[1]

The district court's entry of judgment in Pakovich's favor regarding her qualification for disability benefits under the "own occupation" standard, however, did not end the matter. Instead, the district court then went on to determine for itself whether Pakovich was also entitled to benefits under the "any occupation" standard. The court, in a brief paragraph, stated that the evidence in the record indicated that Pakovich could perform at least sedentary work, and accordingly, found that Pakovich did not qualify for disability benefits after July 2004, and thus entered judgment for Broadspire on that issue. In sum, these two rulings meant that Pakovich was entitled to disability benefits from Broadspire between May 14, 2004 and July 16, 2004.

Following this Memorandum and Order, Pakovich filed a Motion to Alter or Amend the Judgment under FED. R. CIV. P. 59(e). In her motion, she argued that Broadspire never addressed her qualification for benefits under the "any occupation" standard, and moreover, that the district court's finding that she could perform sedentary

---

[1] Pakovich's position required her to be able to lift up to fifty pounds. Under federal regulations, "light work" is classified as lifting no more than 20 pounds at a time, while "medium work" is listed as involving lifting up to 50 pounds maximum. 20 C.F.R. § 416.967.

work still did not mean that it had been found that there was an occupation she could hold that would comport with her "training, education and experience," as required by the Plan documents. Pakovich then asked that the district court reinstate her benefits. The district court denied this motion, stating that Pakovich was now proceeding with a new argument not fully presented originally, and explaining that the record indicated that Pakovich had the "training, education and experience" to perform sedentary work. This appeal followed.

## II. Discussion

Pakovich appeals the district court's finding that she was not disabled from all occupations, as required by the Plan in order to receive disability benefits beyond 24 months. As a preliminary matter, the parties dispute the proper standard of review concerning this issue. Pakovich asserts that the standard should be that for a motion for summary judgment, while Broadspire claims that the standard of review for judgment on the record under FED. R. CIV. P. 52 controls. This dispute stems from the procedural posture below—Broadspire initially filed a motion for summary judgment, which Pakovich responded to with her own motion for judgment under Rule 52. The district court made clear, however, that it would "decide this matter on the pending cross motions pursuant to Rule 52 for judgment on the Administrative Record." Accordingly, because we are reviewing the district court's judgment on a Rule 52 motion, we review any findings of fact or fact-law application for clear error. *Sehie v. City of Aurora*, 432 F.3d 749, 751 (7th Cir. 2005). The additional deference shown by this Court when reviewing the district court's factual findings under Rule 52,

however, has no bearing on this particular case, since our decision rests purely on legal conclusions, which we review *de novo*. *Id.*; *compare with Reich v. Ladish Co.*, 306 F.3d 519, 522 (7th Cir. 2002) ("We review the district court's grant of summary judgment *de novo*.").

The focus of Pakovich's appeal is on her contention that ERISA requires plans to provide beneficiaries with the specific reason for denying benefit coverage, and that because the Plan itself did not provide a reason why she was not entitled to benefits under the "any occupation" standard, the district court erred in finding for Broadspire on this issue. Broadspire, however, claims that Pakovich waived this issue below. Although the district court, when addressing this claim as part of Pakovich's Rule 59(e) motion, also apparently viewed this argument as waived, we do not find this to be the case. Pakovich, in her Rule 52 motion and response to Broadspire's motion for summary judgment, stated that she was also entitled to her "any occupation" benefits because ERISA required that the Plan give all the reasons for her denial, and she was only given the reason for denial under the "own occupation" standard. Although Pakovich developed this argument more fully in her Rule 59(e) motion, contrary to the district court's waiver statement in its order on that motion, Pakovich's argument was sufficiently developed in her original motion that the district court felt compelled to address the claim (albeit in a footnote) in its Rule 52 order.

We now turn to the substance of Pakovich's claim. Her argument rests upon ERISA's requirement that every plan must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific rea-

sons for such denial." 29 U.S.C. § 1133(a); *see* 29 C.F.R. § 2560.503-1(g) (accompanying federal regulations); *see also Schneider v. Sentry Group Long Term Disability Plan*, 422 F.3d 621, 627-28 (7th Cir. 2005) (discussing these statutory and regulatory requirements). Pakovich thus contends that in order for her disability benefits to be denied beyond the 24 month mark under the "any occupation" standard, it was necessary for Broadspire to provide specific reasons why she was not deemed to be "prevented from performing the Essential Functions of any Gainful Occupation that [her] training, education and experience would allow [her] to perform," something which indisputably did not occur.

Broadspire argues that the rule contemplated by Pakovich is unworkable, since it would require plans denying benefits under an "own occupation" standard to also expend their resources evaluating participants under the "any occupation" standard, solely in anticipation of a possible reversal on the "own occupation" issue on appeal. According to Broadspire, such a rule would inappropriately require it to make a determination that had not yet ripened for consideration, since the rule would mandate that plans make determinations under the "any occupation" standard prior to that standard first being triggered by 24 months of disability under the "own occupation" standard.

We agree with Broadspire that it is unnecessary for plans to hedge their bets on a possible reversal on appeal by requiring that, after a plan has already found that an employee does not qualify for disability benefits under the "own occupation" standard, it also must determine whether the employee is disabled from "any occupation." Requiring this further analysis would be impractical and

redundant. Here, for example, Broadspire had already determined, albeit erroneously, that Pakovich was able to perform the essential functions of her own occupation. This finding, in and of itself, necessarily means that Broadspire had already concluded that Pakovich was not "prevented from performing the Essential Functions of any Gainful Occupation that [her] training, education and experience would allow [her] to perform," and thus would not qualify for disability benefits under the "any occupation" standard either. Any finding to the contrary on Broadspire's part at that stage of the proceedings would have been internally inconsistent.

While Broadspire was not required to evaluate Pakovich's eligibility under the "any occupation" standard contemporaneously with its determination that she was not disabled from working her "own occupation," such a determination became necessary after the district court found that Broadspire erred in denying Pakovich coverage under the "own occupation" standard. At issue, then, is whether the district court properly took it upon itself to make this determination, or whether Broadspire should have had the first attempt at the matter.[2] As the

---

[2] Broadspire argues that judicial estoppel prevents Pakovich from arguing that it was improper for the district court to decide the "any occupation" issue when Pakovich had earlier sought that the district court grant it disability under the "any occupation" standard. Judicial estoppel, however, does not apply here. The doctrine of judicial estoppel provides that "when a party *prevails* on one legal or factual ground in a lawsuit, that party cannot later repudiate that ground in subsequent litigation based on the underlying facts." *Urbania v. Cent. States, Se. & Sw. Areas Pension Fund*, 421 F.3d 580, 589 (7th

(continued...)

district court made clear, and the parties do not dispute on appeal, the Plan gave the Administrator discretionary authority, and thus its decisions were only to be reviewed by the district court under an arbitrary and capricious standard. *See Herzberger v. Standard Ins. Co.,* 205 F.3d 327, 329 (7th Cir. 2000). Broadspire argues, however, that since it passed on the opportunity to evaluate Pakovich's disability eligibility under the "any occupation" standard in the spring and summer of 2004, it was then proper for the district court to make that determination *de novo.* Broadspire acknowledges that this Court has not directly addressed this issue, but contends that its position is supported by other Circuits' decisions. *See Gatti v. Reliance Standard Life Insurance Co.,* 415 F.3d 978 (9th Cir. 2005); *see also Gilbertson v. Allied Signal, Inc.,* 328 F.3d 625 (10th Cir. 2003); *see also Seman v. FMC Corp. Retirement Plan for Hourly Employees,* 334 F.3d 728 (8th Cir. 2003); *see also Gritzer v. CBS, Inc.,* 275 F.3d 291 (3rd Cir. 2002). This, however, is not the case.

The cases cited by Broadspire address an issue distinct from that found in this case—the proper standard of

---

[2] (...continued)
Cir. 2005) (emphasis added). Thus, one of the requirements for judicial estoppel to apply is that "the party to be estopped must have prevailed upon the first court to adopt the position." *Id.* This did not occur here. Pakovich initially argued that she should be granted disability benefits under the "any occupation" standard because the Plan failed to provide any reason why she should be denied those benefits. The district court plainly rejected that argument in its order on Pakovich's Rule 52 motion. Accordingly, Pakovich did not prevail on this issue in the first instance and judicial estoppel is thus inapplicable.

review to be given to claims "deemed denied" by the Plan's administrative appeals board. Federal ERISA regulations previously provided that, after an initial benefits determination had been made by the plan administrator, an internal review could be requested by the beneficiary, in which case, if a decision was not issued within 120 days, the claim would be "deemed denied." *See* 29 C.F.R. § 2560.503-1(h) (1999). The issue that arose in many Circuits was what standard of review the federal courts were to apply to these "deemed denied" claims, given that the plans had discretionary authority and thus, if the plan had issued a timely denial, its decision would have only been subject to arbitrary and capricious review. Courts split on this issue, with the majority finding that in such circumstances *de novo* review was appropriate, *see Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 109 (2nd Cir. 2005) (applying *de novo* review); *see also Gritzer*, 275 F.3d at 296 (same); *Gilbertson*, 328 F.3d at 632 (same), while others held that deferential review still applies. *See Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 101 (5th Cir. 1993) (applying deferential standard of review); *see also Gatti*, 415 F.3d at 982 (failure to comply with 29 C.F.R. § 2560.503-1(h) (1999) does not alter standard of review). In all those cases, however, the plan administrator made an initial determination to deny benefits, something which did not happen in this case under the "any occupation" disability standard. The question in those cases, then, was whether deference was still owed to the plan when, on review, it had failed to analyze the appeal before it, and instead let the issue lapse. In other words, was deference owed to the plan when it had failed to take a fulsome bite of the apple that was before it? Here, however, the "any occupation" issue did not ripen into an "apple" ready to be bitten until

the district court rendered a disability determination under the "own occupation" standard. Thus, not only had the Plan's review board failed to address the issue, but the issue was never properly put before the Plan Administrator.

An Eighth Circuit opinion is instructive in how to address the situation in this case. In *Seman*, our sister Circuit crafted a rule that distinguishes the case before this Court from those involving a "deemed denied" decision:

> When a plan administrator fails to render any decision whatsoever on a participant's application for benefits, it leaves the courts with nothing to review under any standard of review, so the matter must be sent back to the administrator for a decision. When a plan administrator denies a participant's initial application for benefits and the review panel fails to act on the participant's properly filed appeal, the administrator's decision is subject to judicial review, and the standard of review will be de novo rather than for abuse of discretion if the review panel's inaction raises serious doubts about the administrator's decision.

334 F.3d at 733 (harmonizing *McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026 (8th Cir. 2000) and *Shelton v. Contigroup Co.*, 285 F.3d 640 (8th Cir. 2002)). Here, the Plan Administrator did not issue any decision on Pakovich's eligibility for disability benefits under the "any occupation" standard, which, like the former example above, left the district court with nothing to review. Although, based upon scattered information in the record, the district court was able to piece together its conclusion that Pakovich was physically capable, and had the "training,

education and experience" to perform sedentary work, there was no decision by the Plan Administrator for the Court to review and the record was not fully developed on this issue. We therefore adopt the first part of the Eighth Circuit's rule for this Court, holding that when the plan administrator has not issued a decision on a claim for benefits that is now before the courts, the matter must be sent back to the plan administrator to address the issue in the first instance. Accordingly, we order that the district court remand the case to the Plan Administrator to determine whether Pakovich was eligible for disability benefits beyond July 17, 2004 under the Plan's "any occupation" standard.[3]

---

[3] Pakovich argues that instead, the proper remedy is for this Court to order reinstatement of benefits, with Broadspire then being permitted to revisit Pakovich's eligibility for those benefits. *See Schneider v. Sentry Group Long Term Disability Plan*, 422 F.3d 621, 629-30 (7th Cir. 2005). This Court bases its remedy determination in ERISA cases " 'on what is required in each case to fully remedy the defective procedures given the status quo prior to the denial or termination' of benefits." *Id.* at 629 (quoting *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 776 (7th Cir. 2003)). In this case, we have distinguished between Pakovich's eligibility for disability benefits for the first 24 months under the "own occupation" standard, and her continued receipt of benefits beyond that point under the "any occupation" standard. Thus, the status quo, prior to Broadspire's termination of Pakovich's benefits, was only her receipt of 24 months' disability under the "own occupation" standard. *See Quinn v. Blue Cross & Blue Shield Ass'n,* 161 F.3d 472, 477-78 (7th Cir. 1998) (remand was the proper remedy when the wrongful termination of benefits occurred two days before benefits would have ceased under the terms

(continued...)

### III. Conclusion

For the foregoing reasons, we VACATE the district court's grant of summary judgment for Broadspire and denial of motion for judgment for Pakovich with respect to Pakovich's eligibility for disability benefits beyond 24 months under the Plan's "any occupation" standard, and order this issue REMANDED to the Plan Administrator for determination. We also DENY Pakovich's request for reasonable attorney's fees, costs and expenses incurred since the district court's Order on November 7, 2006.

---

[3] (...continued)
of the plan unless additional medical information was submitted). Furthermore, reinstatement would undermine our decision that the Plan Administrator must have the first opportunity to decide the "any occupation" issue, since "[i]n essence, . . . awarding retroactive benefits . . . [would amount to] the district court decid[ing] that [Pakovich] was disabled, thus substituting its own judgment for that of [the Plan Administrator, when] that was inappropriate in this case." *Id.* at 478.

---