**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 22, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DAVID G. CARLILE,

      Plaintiff - Appellee,

v.

RELIANCE STANDARD LIFE
INSURANCE COMPANY; RELIANCE
STANDARD LIFE INSURANCE
POLICY NUMBER LTD 123420,

      Defendants - Appellants.

Nos. 19-4123 & 20-4005

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:17-CV-01049-RJS-EJF)**
_____

Joshua Bachrach, Wilson Elser Moskowitz Edelman & Dicker, L.L.P., Philadelphia, Pennsylvania (Clint R. Hansen and Scott M. Petersen, Fabian VanCott, Salt Lake City, Utah, with him on the briefs), for Defendants – Appellants.

Alexander Dushku (Justin W Starr and Jackie Bosshardt Wang with him on the brief), Kirton McConkie, Salt Lake City, Utah, for Plaintiffs – Appellees.
_____

Before **HARTZ**, **MURPHY**, and **McHUGH**, Circuit Judges.
_____

**McHUGH,** Circuit Judge.
_____

Reliance Standard Life Insurance ("Reliance") appeals from the district court's orders (1) concluding that Reliance wrongly denied David G. Carlile's claim for long-term disability benefits, (2) refusing to remand the case and instead ordering an award of benefits, (3) awarding attorney fees and costs to Mr. Carlile, and (4) denying Reliance's motion to amend or alter judgment. We determine that the relevant policy language is ambiguous and therefore construe it in Mr. Carlile's favor and in favor of coverage. We further conclude the district court did not err in refusing to remand the case back to Reliance or in awarding attorney fees and costs to Mr. Carlile. Accordingly, we affirm.

## I. BACKGROUND

### A. *Factual History*

Mr. Carlile began working for Lighthouse Resources, Inc. ("LRI") in 2012. LRI provided Mr. Carlile with long-term disability insurance through Reliance Standard Life Insurance Policy Number LTD 123420 (the "Plan"). Under Mr. Carlile's employment agreement, LRI could terminate Mr. Carlile without cause so long as it gave him ninety days' written notice. In November 2014, LRI provided that notice in a written Notice of Termination. During the notice period, Mr. Carlile continued to work, and LRI ultimately withdrew the notice and continued to employ Mr. Carlile. Unfortunately, the reprieve was not permanent.

In early 2016, LRI experienced a downturn in business and implemented a reduction in force. On March 21, 2016, it issued Mr. Carlile a new notice of termination that would become effective on June 20, 2016. LRI paid Mr. Carlile for the notice period in a lump sum on March 31, 2016. During the notice period, LRI

2

continued paying Plan premiums and did not require Mr. Carlile to work. But LRI's HR representative asserted that Mr. Carlile nonetheless "chose to come into the office at his convenience during the months leading up to his termination date." App. vol. 2, 582.

On May 31, 2016, Mr. Carlile was diagnosed with prostate cancer. As a result of the demands of his treatment, Mr. Carlile's last day of work for LRI was June 7, 2016. Later in June, Mr. Carlile applied for and received short-term disability benefits from Reliance.[1]

In October 2016, Mr. Carlile applied for long-term disability benefits. The next month, Reliance asked LRI to "confirm Mr. Carlile's last day worked and date of work stoppage." *Id.* LRI replied that Mr. Carlile's "last day worked was June 7th." *Id.* Reliance also asked a series of questions about the reduction in force and notice of termination: "Please confirm last full-time active day worked for Mr. Carlile. Was Mr. Carlile terminated due to the March 2016 reduction in force? If so, when was Mr. Carlile's notice of termination and when was he told to stop coming in to work?" *Id.* LRI replied that Mr. Carlile

> was terminated due to the March 2016 reduction in force. His notice was given on March 21st . . . . At that time, he was told that he didn't need to work through the termination date, but he chose to come into the office at his convenience during the months leading up to his termination date. His last day worked was June 7th.

---

[1] Reliance later maintained that it paid these benefits "in error." App. vol. 2, 206. But it chose not to "pursu[e] further investigation in this matter" or to "seek[] any reimbursement for benefits that were paid erroneously." *Id.*

3

*Id.*

In February 2017, Reliance denied Mr. Carlile's claim. It stated that, as a result of the March 21 notice of termination, Mr. Carlile was "no longer eligible for [long-term disability] coverage" as of the last day of March 2016 because he was "no longer working Full-time for [LRI]." App. vol. 1, 194.

Mr. Carlile filed an appeal with Reliance. In response, Reliance again contacted LRI, seeking "information regarding the specific hours [Mr. Carlile] worked" and "any specific information regarding hours he worked up until his date of loss." App. vol. 2, 533–34. LRI replied that Mr. Carlile "was an exempt employee, [so] his hours were not tracked." *Id.* at 533. But the HR representative stated that "[she], along with other employees, c[ould] confirm that [Mr. Carlile] . . . worked in the office throughout his notice period." *Id.* She further informed Reliance that Mr. Carlile had submitted and received expense reimbursements for three conferences that Mr. Carlile attended during the notice period, the last of which took place in May 2016.

In June 2017, Reliance rejected Mr. Carlile's appeal and again denied coverage. It noted that it was "not disputing the fact that as of June 9, 2016, [Mr. Carlile] would have been deemed Totally Disabled under the Policy." App. vol. 1, 206. But Reliance stated that to obtain benefits, Mr. Carlile "must be an Eligible Person, meaning . . . an active employee." *Id.* at 204. And "[t]o be deemed an active employee, [an individual] must have been working minimally [thirty ]hours per week." *Id.* In sum, Reliance concluded that

4

there is no documentation, nor confirmation, that [Mr. Carlile] remained an active, full-time employee beyond March 21, 2016, other than the two business trips in April and May. We understand that [he] continued to perform duties of [his] occupation with [LRI], but it does not appear that [he] did so on a full-time basis, working a minimum of [thirty] hours per week as mandated by the Policy, in order to be eligible for [long-term disability] coverage. Rather, it appears [his] work was performed sporadically, and involved business trips, as well as intermittent office time. As such, without any confirmation that [he] maintained an active, full-time status working at least [thirty ]hours per week, [his] coverage would have ended, as set forth by the Policy and herein, as of March 30, 2016.

*Id.* at 205.

## B.     *Procedural History*

Several months after Reliance denied his appeal, Mr. Carlile filed this action under the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. §§ 1001–1461, alleging that Reliance wrongfully denied his claim for long-term disability benefits. He asked the court to order Reliance to pay "all benefits due under the Plan, commencing with the first day such benefits were due and continuing through the date of judgment." App. vol. 1, 21. He also asked that the court award him attorney fees and costs under 29 U.S.C. § 1132(g).

The parties filed a joint administrative record and cross-motions for summary judgment. The district court granted Mr. Carlile's motion and denied Reliance's. It concluded the Plan was ambiguous as to the term "active," construed that term against Reliance, and held that Mr. Carlile was eligible for coverage. The district court later denied Reliance's motion to alter or amend the judgment. Reliance appealed in Appeal No. 19-4123.

5

The district court then awarded attorney fees and costs to Mr. Carlile. Reliance appealed that decision in Appeal No. 20-4005. We consolidated the two appeals in an order dated January 28, 2020. We have jurisdiction under 28 U.S.C. § 1291.[2]

## II. DISCUSSION

### A. *Appeal No. 19-4123: Long-Term Disability Coverage*

#### 1. Standards of Review

We review an order granting summary judgment de novo, giving no deference to the district court's decision and applying the same standards as the district court. *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 795–96 (10th Cir. 2010). "Where, as here, the parties in an ERISA case both moved for summary judgment . . . , 'summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non[]moving party is not entitled to the usual inferences in its favor.'"[3] *Id.* at 796

---

[2] Appeal No. 19-4123 was docketed before the district court awarded attorney fees and costs, but that does not impact the finality of the summary-judgment order for purposes of appellate jurisdiction. *See Ray Haluch Gravel Co. v. Cent. Pension Fund*, 571 U.S. 177, 179 (2014) ("[A] decision on the merits is a 'final decision' under § 1291 even if the award or amount of attorney[] fees for the litigation remains to be determined."). And the appeal encompasses both the district court's summary-judgment order and its order denying the motion to alter or amend the judgment because Reliance designated both orders in its notice of appeal. *See* Fed. R. App. P. 3(c)(1) (explaining that "notice of appeal must . . . designate the judgment, order, or part thereof being appealed").

[3] Although Mr. Carlile agrees with this overarching standard of review, he also contends we should review the district court's factual findings for clear error. Reliance disputes that the clear-error standard applies here, noting that applying such

(quoting *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 235 (1st Cir. 2006)). And because the parties agree that Reliance did not have "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," this court (like the district court did) reviews Reliance's coverage decision de novo. *Id.* (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

Additionally, we review the denial of Reliance's motion to alter or amend for abuse of discretion. *Castanon v. Cathey*, 976 F.3d 1136, 1140 (10th Cir. 2020).

## 2. The Plan

LRI obtained the Plan from Reliance that provides, in relevant part:

### SCHEDULE OF BENEFITS

. . .

**ELIGIBLE CLASSES:** *Each active, Full-time Employee, except any person employed on a temporary or seasonal basis.*

**INDIVIDUAL EFFECTIVE DATE:** The first of the month coinciding with or next following the day the person becomes eligible.

. . .

**LONG[-]TERM DISABILITY BENEFIT**

**ELIMINATION PERIOD**: [Ninety] consecutive days of Total Disability.

---

a standard would be at odds with both the de novo standard of review applicable to summary-judgment orders as well as the proposition that in ERISA appeals, we "review[] the plan administrator's decision to deny benefits to a claimant, as opposed to reviewing the district court's ruling." *Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1231 (10th Cir. 2012) (internal quotation marks omitted). We need not resolve this conflict. Because we ultimately find in Mr. Carlile's favor under the stricter de novo standard of review, we need not decide whether the more deferential clear-error standard has a role to play in an ERISA appeal from a summary-judgment order.

. . .

**CHANGES IN MONTHLY BENEFIT:** Increases in the Monthly Benefit are effective on the quarter following the date of the change, provided the Insured is *Actively at Work* on the effective date of the change. If the Insured is not *Actively at Work* on that date, the effective date of the increase in the benefit amount will be deferred until the date the Insured returns to *Active Work*. Decreases in the Monthly Benefit are effective on the quarter following the date the change occurs.

App. vol. 1, 108–09 (emphases added).

The Plan also contains a list of defined terms. Important for our purposes are

the following:

"Actively at Work" and "Active Work" mean actually performing on a Full-time basis the material duties pertaining to his/her job in the place where and the manner in which the job is normally performed. This includes approved time off such as vacation, jury duty[,] and funeral leave, but does not include time off as a result of an Injury or Sickness.

. . .

"Full-time" means working for [LRI] for a minimum of [thirty] hours during a person's regular work week.

*Id.* at 110.

In addition, the Plan contains provisions dictating the duration of coverage:

**INDIVIDUAL ELIGIBILITY, EFFECTIVE DATE[,] AND TERMINATION**

. . .

**ELIGIBILITY REQUIREMENTS**: A person is eligible for insurance under this Policy if he/she is a member of an Eligible Class, as shown on the Schedule of Benefits page.

**EFFECTIVE DATE OF INDIVIDUAL INSURANCE:** If [LRI] pay[s] the entire Premium due for an Eligible Person, the insurance for

8

such Eligible Person will go into effect on the Individual Effective Date, as shown on the Schedule of Benefits page.

. . .

**TERMINATION OF INDIVIDUAL INSURANCE:** *The insurance of an Insured will terminate on the first of the following to occur:*
    (1) the date this Policy terminates;
    (2) *the last day of the Policy month in which the Insured ceases to meet the Eligibility Requirements*;
    (3) the end of the period for which Premium has been paid for the Insured; or
    (4) the date the Insured enters military service (not including Reserve or National Guard).

*Id.* at 116 (emphases added).

With these provisions in mind, we proceed to the issues on appeal.

**3.      Eligibility**

Reliance contends the district court wrongly concluded that Mr. Carlile was an eligible employee under the Plan. Reliance argues Mr. Carlile is not eligible for coverage because (1) the Plan unambiguously requires eligible individuals to be actually working at least thirty hours per week, and (2) there was no evidence that Mr. Carlile worked at all, let alone thirty hours per week, in June 2016, when his disability arose.

When interpreting an ERISA plan, this court considers "the plan documents as a whole." *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1250 (10th Cir. 2007) (quotation marks omitted). The court will apply unambiguous plan provisions as written. *Id.* But "[a]mbiguity exists where a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the

9

term." *Id.* (quotation marks omitted). "[T]o determine whether a plan is ambiguous, we consider the common and ordinary meaning as a reasonable person in the position of the [plan] participant . . . would have understood the words to mean." *Id.* (second alteration in original) (internal quotation marks omitted). And if a term is ambiguous, it "must be construed against [the insurer] in accordance with the doctrine of *contra proferentem*," which "construes all ambiguities against the drafter." *Id.* at 1253.

Here, the Plan provides that an employee is eligible for coverage if he is an "active, Full-time Employee, except any person employed on a temporary or seasonal basis." App. vol. 1, 108. This coverage terminates on "the last day of the Policy month in which the Insured ceases to meet the Eligibility Requirements." *Id.* at 116. Thus, we must determine if the Plan is ambiguous by asking whether a reasonable person in Mr. Carlile's position would have understood that he was "an active, Full-time employee" in June 2016, when the disability arose. *Id.* at 108; *see also Miller*, 502 F.3d at 1250. Under the Plan, "Full-time" means "working for [an employer] for a minimum of [thirty] hours during a person's regular work week." App. vol. 1, 110. Although the Plan defines "Actively at Work" and "Active Work," it does not define the term "active." And while the Plan uses those defined terms in providing for Changes in Monthly Benefits, it uses the undefined term "active," to define the Eligible Classes of employees.

Reliance contends the phrase "active, full-time employee" is unambiguous despite the absence of a definition for the word "active." It first argues that "active" means "actually working," and in support, it points to a dictionary definition for the

10

word "active": "characterized by action rather than by contemplation or speculation." Aplt. Br. at 27–28 (quoting Merriam-Webster's Collegiate Dictionary 13 (11th ed. 2003)); *see also Conrad v. Phone Dictionaries Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009) ("[The court] may consult a dictionary to determine the plain meaning of a term."). From this definition, Reliance reasons that "[t]he plain meaning of the term 'active' requires 'action,'" such that an active employee is one who is "actually working." Aplt. Br. at 28. When this reading of "active" is combined with "Full-time," Reliance argues the eligible class of employees includes only those actually working thirty hours per week. Because Mr. Carlile did not work thirty hours per week in June, Reliance contends he was not eligible for long-term disability benefits.

But Reliance's proffered definition is not the only dictionary definition of the word "active." For instance, Merriam Webster's online dictionary includes fourteen definitions for the adjectival form (and one more for the noun form). *Active*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/active (last visited February 2, 2021). One of these definitions is "engaged in full-time service[.]" *Id.* The dictionary qualifies this definition with the phrase "especially in the armed forces." *Id.* But consistent with this latter definition, Mr. Carlile contends that "active" simply means "current employee." Aplee. Br. at 34.

Mr. Carlile also argues that "active" cannot mean what Reliance contends because "[t]he Plan uses different terms to mean 'actually working.'" *Id.* at 33. Recall that the Plan defines "Actively at Work" and "Active Work" as "*actually performing* on a Full-time basis the material duties pertaining to his/her job in the place where

11

and the manner in which the job is normally performed." App. vol. 1, 110 (emphasis added). Thus, if the intent of the Plan had been to limit coverage to persons Actively at Work, it would have been easy to do so by simply inserting the defined term. Instead, the Plan uses the undefined term "active" to describe the employees who qualify for benefits. *See id.* at 108.

We agree with Mr. Carlile that the word "active" must mean something different than the defined terms "Actively at Work" and "Active Work." *See Capital Cities/ABC, Inc. v. Ratcliff*, 141 F.3d 1405, 1412 (10th Cir. 1998) (considering superfluity argument in construing ERISA policy); *cf. Fuller v. Norton*, 86 F.3d 1016, 1024 (10th Cir. 1996) ("We avoid interpreting statutes in a manner that makes any part superfluous."). As Reliance persuasively replies, however, these related terms are not rendered *entirely* superfluous by its proposed interpretation of "active." While Reliance's definition of "active" is limited to the concept of being actively at work for thirty hours a week, the defined terms "Actively at Work" and "Active Work" incorporate additional requirements beyond "actually working." Specifically, those defined terms require that the employee be performing his "material duties" and "in the place where and the manner in which the job is normally performed." App. vol. 1, 110. Thus, while Mr. Carlile is correct that the term "active" must be intended to mean something different than the defined terms, Reliance's proffered definition does not render those defined terms superfluous.

It is also true, however, that the definition advanced by Reliance is one of many dictionary definitions that can be reasonably applied to the term "active" as it

12

is used in the Plan. In particular, Mr. Carlile offers a definition that reasonably requires only that the employee be currently employed. We therefore reject Reliance's argument that the dictionary definition of "active" unambiguously means "actually working."

Reliance next argues that our precedent establishes that "active" unambiguously means "actually working." In support, Reliance cites two cases that appear, at first glance, to support its position. In *Elsey v. Prudential Insurance Co. of America*, this court explained that "'[a]ctively at work on full time' means actually on the job and performing the employee's customary work. Being on the payroll is not enough." 262 F.2d 432, 435 (10th Cir. 1958). And in *Bartlett v. Martin Marietta Operations Support, Inc.*, the employee seeking coverage was a "regular full-time employee," but he was in the hospital at the time the claim arose. 38 F.3d 514, 517, 519 (10th Cir. 1994). This court rejected the insurer's argument "that 'regular full-time' is synonymous with 'active,'" stating that "[i]f the [insurer] wanted to limit benefits to regular full-time employees who were actively working, it could have done so." *Id.* at 517. According to Reliance, the *Bartlett* court defined "active" as a kind of status requirement such that an employee on sick leave, vacation, or temporary disability would not be an "active" employee.[4] *See id.* at 518. We are not convinced.

---

[4] According to the district court, the issue in *Bartlett* was "which of two plans governed the issuance of benefits," such that its discussion of the meaning of the word "active" was dicta. App. vol. 3, 858. This is incorrect, as Reliance asserts. The insurer in *Bartlett* conceded on appeal which plan applied: it was the plan that did not

13

Both *Elsey* and *Bartlett* considered the meaning of the word "active" in relation to whether coverage ever *began*, not whether existing coverage *continued*. *See Elsey*, 262 F.2d at 433; *Bartlett*, 38 F.3d at 516; *cf. Turner v. Safeco Life Insurance Co.*, 17 F.3d 141, 143–45 (6th Cir. 1994) (citing policy language indicating that individual must be "actively at work" on date policy becomes effective despite basing no-coverage decision on failure to meet eligibility requirement of working minimum of thirty hours per week); *Memmott v. United of Omaha Life Ins. Co.*, No. 13-cv-25, 2014 WL 4628548, at *7–8 (D. Utah Sept. 15, 2014) (finding coverage where policy required employee to be actively at work on effective date and evidence showed employee worked from home that day). Whether coverage began is a fundamentally different question than whether a previously eligible employee remains eligible.

Put simply, it accords with reasonable expectations to interpret a policy—and its "active employee" term—to preclude coverage for an employee who never actually worked after the effective date of the policy. *Compare Elsey*, 262 F.2d at 434–35 (concluding that policy never became effective because employee did not return to work after effective date of policy and policy required employee to be "actively at work" on effective date), *with Bartlett*, 38 F.3d at 518–19 (concluding that policy became effective even though employee never returned to work after

include the word "active" in the definition of how and when coverage began. 38 F.3d at 517. Nevertheless, the insurer argued on appeal "that 'regular full-time' [wa]s synonymous with 'active.'" *Id.* Thus, the *Bartlett* court's discussion of the meaning of "active" was not dicta.

effective date because policy did not include "active" requirement in effective-date provisions). But reasonable expectations differ when reading the term "active" to revoke coverage for an established employee whose claim arose while he was still employed, albeit facing an impending termination. *See Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1015 (10th Cir. 2008) (distinguishing cases, including *Elsey*, in which "the employee was not considered 'actively at work'" because "the employee never returned to work at all after the pertinent coverage's effective date"); *Turner*, 17 F.3d at 142 (highlighting, in no-coverage holding, that employee "was not actively at work when the policy became effective, and he did not return to work thereafter"). Accordingly, we reject Reliance's argument that our precedent dictates the undefined term "active" unambiguously means "actually working."[5]

Next, Reliance suggests the word "active" is not ambiguous because it is accompanied by the defined term "Full-time." Recall that "Full-time" means "working . . . a minimum of [thirty] hours during a person's regular work week." App. vol. 1, 110. Reliance argues that "when the terms are read together, to be eligible for coverage, a person must be 'active, working for a minimum of [thirty] hours . . . .'" Aplt. Br. at 20 (omission in original). But Reliance fails to explain how the addition of a regular hourly work requirement elucidates the meaning of the word "active."

---

[5] Reliance also cites *DeGrado v. Jefferson Pilot Financial Insurance Co.*, 451 F.3d 1161 (10th Cir. 2006). But this case involved a policy that specifically defined the term "active full-time employee," so it does not offer any clarity as to what the undefined term "active" means here. *DeGrado*, 451 F.3d at 1170.

15

And more importantly, Reliance omits language from the definition of "Full-time" that undermines its position. App. vol. 1, 110. The Plan defines "Full-time" as working "[thirty] hours *during a person's regular work week*." *Id.* (emphasis added). Reliance ignores the italicized language above in an attempt to create a requirement that an employee work thirty hours a week consistently, each month, to maintain coverage. That reading pushes the language well beyond what a reasonable person would understand from the eligibility description and the meaning of the term "full-time." *See Miller*, 502 F.3d at 1250. Indeed, contrary to Reliance's position, this court has described a regular work week as something established by employment terms and routine practice, not as something that must be re-established with each passing month. *Weber*, 541 F.3d at 1012 ("That illness or vacation might irregularly interrupt an employee's regular assignment does not change the 'regular' work experience of an employee."); *see also Jones v. Unum Provident Corp.*, 596 F.3d 433, 436 (8th Cir. 2010) (noting that "coverage would continue for a full-time employee who is reduced to part-time work during a medical leave").[6]

[6] Reliance argues that *Jones* actually supports its reading of the Plan, noting that the Eighth Circuit there upheld the denial of benefits based on loss of coverage. Reliance is correct about the outcome of *Jones*. But that result does not help Reliance because the policy at issue in *Jones* differed from the Plan in a critical way: it provided that coverage terminated when an employee "stop[ped] active work," and it defined "active work" as "working full-time for the policyholder at the employee's usual place of business." 596 F.3d at 436. Thus, the court in *Jones* affirmed no coverage for an employee who quit work for several months, despite being released to work by her doctor. *See id.* at 437. Here, the Plan contains no similar termination provision, and there is no evidence that Mr. Carlile quit working before June 7, when his cancer treatment forced him to stop working.

16

For instance, in *Weber*, we rejected the insurer's argument that to be eligible for coverage, an employee must work thirty hours per week after the effective date of the policy, concluding the policy simply did not state as much. *Id.* at 1012–13. Instead, the policy required an eligible employee to *regularly* work at least thirty hours per week. *See id.* This court found that requirement satisfied where the employee regularly worked at least thirty hours per week in the months prior to when coverage began. *See id.* Similarly, here, the eligibility provision nowhere states that an individual must work thirty hours every week, or even at least one week per month. It states only that "Full-time" means working thirty hours in a "regular work week."[7] App. vol. 1, 110.

Nevertheless, Reliance asserts that the language at issue here is different from the language at issue in *Weber* because here, the word "active" modifies the word "full-time," such that the Plan "requires employees to *actually* work [thirty] hours per week to remain insured." Aplt. Br. at 24. But in addition to the fact that Reliance has

---

[7] Reliance suggests in passing that Mr. Carlile is not eligible for benefits because after he received his termination notice, he "no longer had a 'regular work week'" and therefore did not meet the full-time eligibility requirement. Aplt. Br. at 28 (quoting App. vol. 1, 110); *see also* Aplt. Br. at 15 ("By the time he claimed disability, Mr. Carlile did not have a 'regular work week.'" (quoting App. vol. 1, 110)); Rep. Br. at 11 ("[H]is coverage automatically terminated when he failed to [work thirty hours per week] regularly."). Reliance offers no authority to support the proposition that a not-yet-effective notice of termination negates an established history of regularly working thirty hours per week. And the Plan lacks any definition of "regular work week." In any event, given Reliance's sparse briefing on this point, we decline to consider this argument further. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (declining to consider inadequately briefed argument).

17

not established that the word "active" unambiguously means "actually working," Reliance's proposed interpretation of the phrase as a whole—"active, Full-time employee"—runs contrary to its grammatical structure. App. vol. 1, 108. The word "active" does not modify "Full-time"; nor is there a separate defined term "active full-time." *See id.* at 110–11. Instead, the comma between "active" and "Full-time" indicates that each adjective modifies "employee." *See* Bryan A. Garner, Garner's Modern American Usage 878 (3d ed. 2009) (explaining that "coordinate adjective" is "[a]n adjective that appears in a sequence with one or more related adjectives to modify the same noun" and that such "adjectives are separated by a comma or joined by *and*"). Thus, to be eligible for coverage, an employee must be both "active" (whatever that word means) and "Full-time" (working thirty hours per week in a regular work week). Accordingly, we conclude that the defined term "Full-time" fails to resolve the ambiguity concerning the meaning of "active."[8]

We return, then, to the full phrase governing eligibility in this case: "active, Full-time employee." App. vol. 1, 108. The undefined term "active" is ambiguous— an ambiguity that is not resolved by dictionary definitions, precedent, or context. *See*

------

[8] Because nothing in the Plan requires Mr. Carlile to prove he worked thirty hours per week in any particular week and because Reliance does not dispute that Mr. Carlile's regular work week—before the notice of termination—included working thirty hours per week, we need not address the parties' arguments about whether (1) Reliance failed to fulfill its fiduciary duty to fully investigate and request such hourly information or (2) Mr. Carlile failed to meet his burden of showing he was entitled to coverage by providing evidence that he worked at least thirty hours per week during or throughout the notice period.

*Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1318 (10th Cir. 2009)

("Ambiguity exists when a plan provision is reasonably susceptible to more than one

meaning, or where there is uncertainty as to the meaning of the term." (quotation

marks omitted)). We therefore construe this term in Mr. Carlile's favor to mean

"current employee" rather than endorsing Reliance's proposed definition of "actually

working." *See Miller*, 502 F.3d at 1249 (explaining that under doctrine of *contra*

*proferentem*, we "strictly construe[] ambiguities in insurance contracts against the

drafter"); *Campbell v. Unum Life Ins. Co.*, No. CIV.A. 03-1445, 2004 WL 1497712,

at *13–14 (E.D. La. July 2, 2004) (construing ambiguous term "active employment"

against insurer and explaining that active employment does not end when

"employee's position is temporarily modified due to illness, vacation, or other

reasons, unless the employee's status changes").[9]

Indeed, as the district court noted, the Fourth Circuit reached the same

conclusion in a case involving similar policy language, the same insurance company,

and analogous facts: *Tester v. Reliance Standard Life Insurance Co.*, 228 F.3d 372

(4th Cir. 2000). There, like here, the policy was "ambiguous as to the meaning of

'active' because it neither define[d] 'active,' nor provide[d] criteria for determining

when an employee is 'active.'" *Tester*, 228 F.3d at 375. Further, "[t]he policy d[id]

---

[9] Reliance argues that *Campbell* is not on point because there, the employee's status did not change, and evidence showed the employee worked from home. But Mr. Carlile's status did not change either—he received a notice of termination but had not actually been terminated. Further, like in *Campbell*, Mr. Carlile provided evidence that he continued to work during the notice period.

not specify under what circumstances the employee must work, how frequently the employee must work, and how long the employee must be out of work before he is no longer considered 'active.'" *Id.* at 377. Thus, the court construed the term in favor of the plaintiff and against Reliance, determining the plaintiff was entitled to death benefits even though she had been out on sick leave when she died. *Id.* In support of this result, the court noted that "[a] reasonable employee would not expect his insurance coverage to terminate if he takes a sick day or if he dies on account of an accident before working [twenty] hours in a particular week"—"such an interpretation . . . would lead to absurd results outside of the insured's reasonable expectations." *Id.* at 376–77.

Interestingly, it appears that Reliance declined to amend its standard policy language in the wake of *Tester*—we are faced with the same ambiguous term in this case. Nevertheless, Reliance seeks to distinguish *Tester* on the grounds that the time period following a notice of termination is different from being out on sick leave. In particular, Reliance highlights that Mr. Carlile was not required to do any work and was paid up front, in one lump sum, for the ninety-day notice period. Yet several other factors weigh against Reliance's position: the termination was not yet effective, LRI had previously given Mr. Carlile notice of termination but then had withdrawn it and continued employing Mr. Carlile, LRI paid Mr. Carlile for the notice period, and LRI considered Mr. Carlile a full-time employee. *See id.* at 377 (considering

20

continued paychecks relevant to determining reasonable expectations of employee).[10]

Under these circumstances, as in *Tester*, a reasonable employee would not expect his

insurance coverage to terminate during the notice period based on an understanding

that he was no longer an "active" employee. *See id.* We therefore reject Reliance's

position that *Tester* is not on point.

In sum, the Plan's eligibility requirements are that an employee be "active"

and "Full-time." App. vol. 1, 108. Construing the ambiguous term "active" in

Mr. Carlile's favor and against Reliance, that word means merely that the employee

is currently employed—which Mr. Carlile indisputably was here, because his

termination was not yet effective. And Mr. Carlile was also "Full-time" because there

is no dispute that his regular work week at LRI involved working at least thirty hours

per week. Mr. Carlile is entitled to long-term disability benefits under the Plan.

## 4.     Remand

Next, Reliance argues that even if Mr. Carlile is eligible for coverage, this case

should be remanded back to Reliance for a determination of whether Mr. Carlile was

totally disabled. Whether to remand a case back to the administrator or order an

award of benefits "hinges on the nature of the flaws in the administrator's decision."

*Weber*, 541 F.3d at 1015. Remand is appropriate if "the administrator failed to make

_____

[10] Reliance argues that LRI's opinion that Mr. Carlile remained an active, full-time employee is not determinative of the coverage issue in this case. But, even so, it is one factor relevant to an employee's reasonable expectations—and reasonable expectations are part of how we interpret the relevant policy language. *See Miller*, 502 F.3d at 1249.

21

adequate factual findings or failed to adequately explain the grounds for the decision." *Id.* (internal quotation marks omitted). But "if the evidence in the record clearly shows that the claimant is entitled to benefits, an order awarding such benefits is appropriate." *Id.* (quotation marks omitted). And remand is not appropriate to provide the plan administrator the opportunity to reevaluate a claim based on a rationale not raised in the administrative record. *See Spradley v. Owens-Ill. Hourly Emps. Welfare Benefit Plan*, 686 F.3d 1135, 1142 (10th Cir. 2012).

Reliance argues that the district court erred in refusing to remand. In particular, Reliance contends that because it denied coverage on the basis that Mr. Carlile was not an eligible employee, it had no need to determine whether he was totally disabled. As such, Reliance asserts, remand is appropriate so that it may consider this other ground for denial. Reliance's position is both factually inaccurate and contrary to the law. As a factual matter and as the district court noted, Reliance specifically stated, when denying Mr. Carlile's appeal, that it did "not disput[e] the fact that as of June 9, 2016, [Mr. Carlile] would have been deemed Totally Disabled under the Policy." App. vol. 1, 206. This concession negates Reliance's contention that it did not consider whether Mr. Carlile was totally disabled. Reliance did consider that question, and it found that Mr. Carlile *was* totally disabled, at least as of June 9, 2016.

On the legal side, Reliance cites *Pakovich v. Broadspire Services, Inc.* for the proposition that insurers need not "hedge their bets on a possible reversal on appeal" by considering alternative bases for coverage denials. 535 F.3d 601, 604 (7th Cir.

22

2008). But in context, *Pakovich* does not support such a broad proposition. There, remand was necessary for the administrator to consider coverage under a different standard because considering coverage under that standard at an earlier stage "would have been internally inconsistent." *Id.* at 605. Moreover, the different standard did not become applicable until after twenty-four months of disability, so it was not possible to apply it in an initial denial. *See id.*

That is not what happened here. Reliance denied Mr. Carlile long-term disability benefits on the basis of not falling within the eligible class of employees under the Plan, based on Reliance's interpretation of the phrase "active, Full-time employee." App. vol. 1, 108. Not only did Reliance not challenge whether Mr. Carlile was disabled—it *expressly stated* that it did not dispute he was totally disabled as of June 9, 2016. *Pakovich* therefore does not support a remand here.

Reliance also argues that remand is necessary to determine the duration of Mr. Carlile's disability and states that it lacks "sufficient evidence to calculate" his benefits. Aplt. Br. at 34. But as Mr. Carlile responds, the duration of his disability and the exact amount that Reliance owes are not issues in this case. Reliance disputes this, asserting these are issues presented in this case because Mr. Carlile's complaint asked the court to award benefits "commencing with the first day such benefits were due and continuing through the date of judgment." App. vol. 1, 21. But that is not what the district court ordered. The district court clarified in its order denying Reliance's motion to alter or amend the judgment that it was granting "only the relief requested in [Mr.] Carlile's [m]otion for [s]ummary [j]udgment, which was to

23

conclude [Mr.] Carlile 'was an "active, full-time employee" and thus eligible for benefits.'" App. vol. 3, 862. And the district court stated expressly that it was making "no determination regarding what [Reliance] owe[s] under the terms of the Policy." *Id.*

Thus, remand is not necessary for Reliance to consider the duration of Mr. Carlile's ongoing disability or the exact amount of Mr. Carlile's award. *Cf. Lemons v. Reliance Standard Life Ins. Co., Emp. Benefit Plan for Emps. of Amerisafe Inc.*, 534 F. App'x 162, 164–65 (10th Cir. 2013) (unpublished) (noting that claim of improper offsets was "separate and unrelated" from claim of improper termination of benefits). Those issues were not before the district court and are, therefore, not before us on appeal. Because "the evidence in the record clearly shows that [Mr. Carlile] is entitled to benefits, an order awarding such benefits is appropriate." *Weber*, 541 F.3d at 1015 (quotation marks omitted). Any disputes regarding the amount and duration of payment remain open for future resolution in the appropriate forum.

### B.     *Appeal No. 20-4005: Attorney Fees and Costs*

Reliance contends that the district court abused its discretion in awarding attorney fees and costs to Mr. Carlile. *See Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013) (providing for abuse-of-discretion review of orders on attorney fees and costs). This issue rises and falls with whether Mr. Carlile is an eligible employee. Reliance advances no independent argument as to the district court's award of attorney fees and costs, contending only that because Mr. Carlile is not an eligible employee, he could achieve no success on the merits and thus cannot

24

be eligible for an award of fees and costs. *See id.* ("A court may award fees and costs under 29 U.S.C. § 1132(g)(1) as long as the fee claimant has achieved 'some degree of success on the merits.'" (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010))). Because we hold the district court correctly determined Mr. Carlile was an eligible employee entitled to benefits and because Reliance advances no other argument on this issue, we cannot conclude the district court exceeded its discretion in awarding Mr. Carlile his attorney fees and costs.

## III.    CONCLUSION

We agree with the district court that the term "active" is ambiguous and therefore construe that term in Mr. Carlile's favor. Under that construction, despite the March 2016 notice of termination, Mr. Carlile was an "active, Full-time employee" when his disability arose in June 2016 because (1) he was currently employed by LRI and (2) his regular work week was at least thirty hours per week. The district court also correctly refused to remand and did not abuse its discretion in awarding Mr. Carlile attorney fees and costs.

We AFFIRM.

25